Argued 17 April, decided 11 June, 1907.

### HARVEY *v.* DEEP RIVER LOGGING CO.

90 Pac. 501.

CARRIERS—DUTY TO PERSON VOLUNTARILY CARRIED—FARES.

1. One not a common carrier who voluntarily undertakes to transport another is responsible for injury to him resulting from negligence, whether the service was for a compensation or gratuitous.

CARRIERS—IMPLIED AUTHORITY OF TRAINMEN.

2. Employees operating transportation appliances, such as engineers or conductors, cannot by virtue of their employment impose the liability of a carrier on their employer by permitting strangers to ride on their conveyances.

CARRIERS—EVIDENCE OF CUSTOM TO CARRY PASSENGERS.

3. Testimony that the operating employees of a logging road using engine and trucks, and not engaged at all in the passenger business, were in the habit of permitting persons to ride thereon from point to point, and that such practice was open, long continued and notorious, and was within the actual knowledge of the manager, reasonably tends to show that the owner of the road expressly or impliedly consented to allowing persons to be so carried, thereby establishing the relation of passenger and carrier as to any person so carried.

CARRIERS—CONTRIBUTORY NEGLIGENCE BY RIDING IN EXPOSED POSITION.

4. One riding with the implied consent of a logging company on its logging train, consisting of an engine and a logging truck, is not guilty of contributory negligence *per se* in riding on the truck, which was the place where persons usually rode.

CARRIERS—RISKS ASSUMED BY PASSENGER.

5. One riding on the logging train of a logging company, with its implied consent, does not assume the risk of collision through its negligence with another of its trains, though he does assume the risks incident to the proper operation of that kind of a train.

From Multnomah: ARTHUR L. FRAZER, Judge.

Action by James F. Harvey against the Deep River Logging Co. Judgment for plaintiff. Defendant appeals.

AFFIRMED.

For appellant there was a brief over the name of *Coovert & Stapleton,* with an oral argument by *Mr. Elmer E. Coovert.*

For respondent there was a brief over the name of *Gammans & Malarkey,* with an oral argument by *Mr. Dan J Malarkey.*

Opinion by MR. CHIEF JUSTICE BEAN.

This is a personal injury case. The defendant is a corporation engaged in the logging business in the State of Washington, and, as a part of its appliances, owns and operates a logging

steam railroad from a landing on Deep River to its logging camp, a distance of about four miles. The equipment of the road consists of three engines and the necessary logging trucks. A logging truck is a platform about six by ten feet in size, supported by four wheels, upon which one end of a log rests while being hauled; the other end resting upon a similar truck. The defendant has no passenger coaches or cars, and is not engaged in the carrying of passengers; but it was a custom to send an engine and one or more of its logging trucks to the landing three or four times a week for freight and supplies, and any person desiring to ride was permitted by the employee in charge of the train to get in the engine cab or on the car, and be carried from point to point without the payment of fare. The evidence tended to show that this practice prevailed generally from the time the road was completed until the injury to the plaintiff, a period of three or four years.

On September 1, 1904, the manager of the company sent a train, consisting of an engine and one flat car, or truck, in charge of an engineer, to the landing to get his wife and children and some freight belonging to the company. When within 200 or 300 yards of the landing, the train passed the plaintiff, who is an itinerant vender of goods, and three or four other persons who were waiting to go out to the camp, and the plaintiff inquired of the engineer if the train would stop at that point on its return. The engineer, in reply, told him it would not, and if he wanted to go to the camp he must get on the car there, and stopped the train for that purpose. The plaintiff and the other persons thereupon boarded the flat car, and the train proceeded to the landing, where some freight was put on the car, and the superintendent's wife and children and another lady got in the cab of the engine to ride to the camp. The train then started back, stopping about 500 yards from the landing to take aboard some section hands and their car, and while passing around a sharp curve in the road it suddenly came into collision with another train loaded with logs, which had been carelessly and negligently permitted to leave the camp. The

plaintiff was thrown from the car and seriously injured, and brings this action to recover damages therefor.

In his complaint he alleges that for some time prior to the injury defendant customarily and habitually carried passengers and persons on its trains, and that on September 1, 1904, he desired to go and be carried from the river terminus of the defendant's railroad to its logging camp, and for that purpose got aboard and took passage on one of its trains in good faith, by the invitation and permission of defendant's agents and employees, and was by such persons accepted and received as a passenger on such train. The answer, after denying the allegations of the complaint, sets up affirmatively that plaintiff furtively and negligently got on board one of defendant's logging trucks, and was riding thereon at the time of the injury, without permission or consent of the defendant. After plaintiff rested his case, the defendant moved for a nonsuit, which being overruled, it gave evidence in support of its defense, and the jury rendered a verdict in favor of the plaintiff. From the judgment rendered therein, the defendant appeals, alleging as the only error the overruling of its motion for a nonsuit.

1. The position of the defendant is that plaintiff was not a passenger at the time of his injury, but at most was a mere licensee, to which it owed no duty, except not to willfully or wantonly injure him. It is clear that plaintiff was not entitled by law to be carried on defendant's train. It was not a common carrier of passengers, nor engaged in that business. It could therefore have lawfully refused to carry him, and to have used force, if necessary, to remove him from the car. If, however, it did not do so, but expressly or impliedly authorized or empowered the person in charge of the train to permit him to ride thereon, it must be held responsible for negligence or want of care in his transportation: *Simmons* v. *Oregon Railroad Co.* 41 Or. 151 (27 Am. & Eng. R. Cas., N. S. 896: 69 Pac. 440, 1022) ; *Wagner* v. *Missouri Pac. Ry. Co.* 97 Mo. 512 (10 S. W. 486: 3 L. R. A. 156). The fact that no fare was required or paid cannot affect its liability, for, as said by Baron PARKE: "One who undertakes to provide for the conveyance of another

is responsible, although he does so gratuitously": *Lygo* v. *New-bold,* 23 L. J. Excheq. (N. S.) 108, 110.

2. The only question, then, is whether there was evidence tending to show that plaintiff was being carried by the express or implied consent of the defendant company. The engineer or person in charge of the train had no authority, by virtue of his employment alone, to bind it by accepting plaintiff as a passenger, or by permitting him to ride on the train. The defendant is not engaged in the passenger business, and its trainmen cannot impose the duties and liabilities of that business upon it without its consent.

3. There was evidence tending to show that from the time the road was built to the date of the accident, a period of about four years, it was the habitual custom and practice, known to and acquiesced in by the manager and officers of the defendant, for the engineers or persons in charge of its trains to permit persons desiring to go from one point on the road to another to ride in the engine cab or on the flat car when the train was not hauling logs, and that plaintiff was riding in pursuance of this custom or habit. Heilin testified that his house was near the defendant's road; that he often saw trains going back and forth; that it was, and had been for three years or more prior to plaintiff's injury, the habit and custom for persons other than employees of the company to ride on the train when it was not loaded with logs; that he himself had often so ridden without objection from the company or any of its officers or agents; and that he never heard of them making any objections to persons other than employees being carried on the trains prior to plaintiff's injury. Mathison, who also lives near the road, testified that he had been familiar with the operation of the road ever since it had been built; that he had ridden on the trains many times without objection, and with the full knowledge of the defendant's manager and other officers, and without objection from them; that it was and had been the custom and practice to allow anybody to ride on the train; that the company's manager and other officers knew that people generally

were in the habit of riding thereon; that when the logging camp was in operation the company sent trains down to the landing three times a week to meet the steamer from Astoria; that passengers who came in on the steamer and desired to go to the camp were always permitted and allowed to ride on the flat cars or in the engine cab. Lund, the engineer in charge of the train on which plaintiff was riding at the time of his injury, testified that he had been at work on the defendant's road for about three years; that, while its manager had told him several times to "chase people off" the train, he had never put any one off; that persons living at the camp and along the road, and other persons, not employees of the company, were allowed to ride by him; that the manager often rode on such trains with other persons without objecting to his carrying passengers; that three times a week a train would go down to the landing and meet the boat from Astoria, and travelers coming in on the boat were always allowed to ride up to the camp on the train, and he supposed the manager knew of the practice.

This evidence tends to show that the manager of the defendant company not only had actual knowledge that the engineers and persons in charge of its trains were in the habit of permitting passengers to ride thereon, but such practice was so open, notorious and continuous that it is hardly probable that such practice could have been carried on without his knowledge. There was evidence, therefore, tending to show that plaintiff was lawfully riding on the train by permission of the defendant company at the time of his accident, and it therefore owed to him the duty of not injuring him by its negligence.

4. And he was not guilty of contributory negligence *per se* in riding on the platform or truck: *Gray* v. *Columbia Cent. R. Co.* 49 Or. 18 (88 Pac. 297); *Wagner* v. *Missouri Pac. Ry. Co.* 97 Mo. 512 (10 S. W. 486: 3 L. R. A. 156).

5. He undoubtedly assumed the risks naturally incident to the character of the train and its equipment; and, if it was managed with the care requisite for such a train, it is all he had a right to demand or expect: *Chicago, B. & Q. R. Co.* v. *Hazzard,* 26 Ill. 373; *Galena & C. U. R. R. Co.* v. *Fay,* 16 Ill.

558, 568 (60 Am. Dec. 323). But he did not assume the risk of injury in a collision with another train caused by the negligence of the defendant company.

The motion for nonsuit was properly overruled, and the judgment will be affirmed.                                        Affirmed.