# *Ex parte* City of Mobile.

## *Mandamus.*

### (Decided May 14, 1908.  46 South. 766.)

*Mandamus; Issuance; Grounds.*—Mandamus will not issue to compel a chancellor to recuse him on the grounds of disqualification to determine a petition filed by the trustee under Acts 1880-81, p. 329, seeking to invoke action of the court with reference to the control and distribution of funds without the corpus of a trust estate, so that a ruling thereon would be either a mere moot question or would be on a matter outside the power of the court, since mandamus will not issue where its effect would be wholly vain.

Original petition in the Supreme Court.

Original application on the part of the city of Mobile for mandamus to compel Hon. T. H. Smith, Chancellor, to recuse himself because of his disqualification to determine a petition filed by Z. M. P. Inge, Trustee, in reference to certain bonded indebtedness of the city, and other matters which appear from the opinion. Mandamus denied.

B. B. BOONE, for petitioner.  The chancellor against whom relief is sought is a first cousin to the trustee and the attorney for the trustee and is incompetent to act on the petition filed in his court by them in the chancery court of Mobile.—Sec. 2637, Code 1896; *Crook v. Newborg,* 124 Ala. 478; *Moses v. Julian,* 84 Am. Dec. 114; *State ex rel. Smith v. Pitts,* 139 Ala. 152.  The Acts of Dec. 13, 1898, and Jan. 27, 1899, are unconstitutional. The legislature cannot usurp the judicial powers by excepting one case or one party from the operation of a general rule of law, either as to the right or the remedy. —6 A. & E. Ency. of Law, 1044; *Baggs' App.,* 82 Am. Dec. 583 and note; *Holden v. James,* 6 Am. Dec. 174; *Guy v. Hermance,* 63 Am. Dec. 85; *S. & N. A. R. R. Co.*

[Ex parte City of Mobile.]

*v. Morris,* 65 Ala. 193; *Jones v. Jones,* 95 Ala. 450; *Clark v. Jack,* 60 Ala. 271.

GREGORY L. & H. T. SMITH, for appellee. The petition is based upon two grounds. First, the relationship between the chancellor and the trustee and his attorney. Second, because the chancellor was of counsel for the trustee before his election as chancellor. On the second proposition counsel cite.—23 Cyc. 592; *Collins v. Hammack,* 59 Ala. 452; *Trawick v. Trawick,* 67 Ala. 273; Freeman on Judgments, Sec. 145; 12 Ark. 190; 52 Ind. 51; 89 Mass. 385; 16 Wis. 553; 43 Ark. 33; 37 N. H. 340; 10 Wend. 167; 42 Penn. 557. As to the first proposition counsel cite.—16 Ark. 196; 20 Minn. 313; 5 Paige, 486; 9 Paige 202; 69 Hun. 365; 25 Pac. 985; 52 Mich. 214; 108 Mich. 622.

McCLELLAN, J.—Application for mandamus to compel Thomas H. Smith, as chancellor for the Thirteenth district, Southwestern chancery division of Alabama, to recuse himself because of alleged statutory disqualification to hear and determine the petition of Z. M. P. Inge as trustee, the effect and purpose of which petition will later appear.

Because of the insolvency of the municipal corporation known as the "Mayor, Aldermen, and Common Council of the City of Mobile," the Legislature, by an act approved February 11, 1879 (Acts 1878-79, p. 381), vacated and annulled its charter, and created a commission with defined powers and duties looking to an adjustment of the large liabilities existing against the mentioned municipality. Among other duties imposed on the commission was that they should, after consultation with the bondholders of the municipality, propose and submit, through the Governor, to the next General As-

sembly of the state a plan or scheme for the adjustment
and settlement of the indebtedness of the late corpora-
ion.   This was done, as appears from the acts of that
body approved December 8, 1880, and later amended on
February 24, 1881; both to be found in Acts 1880-81, pp.
329-360, and pages 402-406.   The plan or scheme propos-
ed by the commission was the foundation for these acts.
Summarized in substance, it was provided by these acts
that the bonded indebtedness of the late municipality
should be refunded; that a special and nondivertible
tax of three-quarters of 1 per cent be and was levied on
the taxable property within the erstwhile limits of the
abolished corporation for the payment of the principal
and interest of such indebtedness; and that all property
of the late municipality not necessary to its governmen-
tal operation, etc., should be devoted to the liquidation,
after the manner required by the act, of the liabilities of
the late city, either by its sale or rental under the sanc-
tion of the chancery court of the county of Mobile.   The
trust assumed by the state was, then, the liquidation of
the bonded indebtedness, and its interest at a rate de-
fined, described in the act, by the two agencies (1) of
sale of nongovernmental properties of the late munici-
pality or its rental and (2) of the collection of the spe-
cial tax mentioned before.   We can discover in these acts
no other elements of a trust estate than these out of or
by which the creditors provided for were to be paid; the
conditions set forth in section 4 (page 330) of the act
approved December 8, 1880, with respect to further leg-
islation, and, that failing, action by the Governor in
the appointment of the commissioners upon whom it
seems to have been intended to confer the power to issue
new bonds, not having been, in any sense, complied with.
The machinery created for the administration of the
trust assumed by the state consisted of a superintendent

of wharfs, a tax collector, and a trustee or agent, and a depository for the deposit and keeping of the funds belonging to the trust.

Without attempting a resume of provisions of the whole act, aside from the summary above made, we are unable to find any provision in the act or its amendment imposing on the trustee any duty to anticipate or prepare for the liquidation of the debts mentioned in the act, much less to provide, or to exert himself in any wise to that end, for the ultimate payment of the said indebtedness, and its interest, or to the refunding, by any method, of the bonds of which the trust acts' treat, otherwise than as ability for such payment may be afforded by the two agencies referred to above, viz., the sale or rental of certain properties of the insolvent and the special tax levied by the act. If any such duty obtains, it has escaped us. By the very terms of section 35 (page 358) of the act agents and officers created thereby are circumscribed in duty, power, and authority, and care is taken to provide that there be no enlargement thereof; and we may add that no power is conferred on the trustee to in any wise terminate the trust, except the possibility that the application of the trust funds to the indebtedness to which it should be devoted might attain in whole or in part, that end. In other words, his evident power and duty is by the terms of the acts limited to service looking to the application of the trust funds made by the acts the corpus of the trust estate. The petition of the trustee, mentioned before, to hear which it is alleged that the chancellor is disqualified, invokes the action of the court or chancellor with reference to funds, bonds, or values, not of the trust to the administration of which the trustee is attached or anent which he has no duties, but with reference to property of the debtor with the disposition of which by it the trustee nor the court can as of right

interfere. That the city of Mobile may pay the bonded indebtedness for which the trust was created, or otherwise by agreement with the creditors refund the same, in whole or in part, without regard and independent of the trust, is not, of course, denied; and the fact, if so, that some of the bondholders cannot be discovered and that payment to or arrangement with them is therefore impossible, cannot operate to enlarge any power of the trustee in the premises—certainly not to invoke the decrees of the chancery court to the control or disposition of money or property entirely without the corpus of the trust estate.

If it be conceded that the trustee is possessed of any duty warranting the presentation of such a petition, and if the petition in question is construed as merely invitatory as far as the debtor city is concerned—as simply blazing a way, to follow which the city may or may not elect to do—then any ruling thereon by the court or chancellor will be purely moot; for the city may not take the course anticipated, and the writ should not generally issue to such purpose. 26 Cyc. 156, and notes. On the other hand, if the petition asks action with the view to the compulsory deposit of the funds or bonds of the city, not of the trust, with the court or its officers or agents, then the court is clearly without power to so decree against the will or wish of the city. Hence, in either event, the action sought by the petition cannot be granted. Confronted with such a situation, we must necessarily apply the principle, and that without deciding the competency vel non of the chancellor, that the writ of mandamus will not issue when its effect would be wholly vain.—*Ex parte Goldthwaite,* 120 Ala. 481; 24 South. 389, 26 Cyc. 147, 149, 153, 156, and notes. The petition, if invoking the court's action to a compulsory order against funds outside the trust in its jurisdiction for ad-

[Frick v. Harper.]

ministration, could receive no favorable consideration, whoever the chancellor hearing it may be, so that the determination of the chancellor's disqualification , if so, would be a futile service. On the other hand, if the petition's office is to anticipate certain difficulties, and to provide for a surmounting of them, in the way of a termination of the trust, some motion to that end by the city will serve to invite the court's action. The petition should be stricken from the files.

The writ is, for the reasons stated, denied.

TYSON, C. J., and DOWDELL and ANDERSON, JJ., concur.