# Lawrence *v.* Kaul Lumber Co.

*Damage for Injury to Passenger.*

(Decided April 13th, 1911.  55 South. 111.)

1. *Appeal and Error; Harmless Error; Pleading.*—Where, under the evidence in the case, a recovery could not be had upon certain counts of the complaint, any error in sustaining demurrers to such counts was harmless.

2. *Same; Review; Waiving Error.*—Assignments of error not argued are considered waived.

3. *Same; Assignment; Necessity.*—Although charges are set out in the record, yet, if the court's action thereon is not assigned as error, they are not presented for review, and will not be considered.

4. *Carriers; Passengers; Who Are.*—The essentials to render one a passenger are that he be accepted as a passenger for transportation by the carrier; it is not necessary that the carrier should be a common carrier, nor that the train or cars should be used or adapted primarily to carrying passengers, and one may be a passenger although he pays nothing for his carriage.

5. *Same.*—Where a carrier is not a common carrier and has not expressly contracted to carry in the particular case, if the presence of the person entering the train and taking passage is without the knowledge or consent of the one in charge of the train, such person is but a trespasser; if, on invitation, or with the knowledge and acquiescence of an agent, not authorized or shared by his principle, he is a licensee, but if on the invitation of the carrier, its manager, or any authorized agent, the invitation being either expressed or implied, such person is a passenger.

6. *Same; Care Required.*—Where a passenger chooses to be transported on a train not adapted to passenger service, such as a freight or a logging train, while he does not waive the carrier's due care with reference to his safety, he does waive all precaution, whether in equipment or operation, which are inconsistent with the ordinary use and conduct of such a train, and assumes the risk of injury from

[Lawrence v. Kaul Lumber Co.]

accident incident to such train when operated and equipped in the usual way.

7. *Same.*—A carrier not a common carrier of passengers is liable to a passenger for injuries proximately caused by simple negligence, but for injuries to a licensee or trespasser, he is liable only for wanton negligence or wilful injury, including a failure to exercise due care to avert injury after the danger is apparent.

8. *Same; Complaint.*—Where a complaint for causing the death of a passenger, does not charge that the defendant was a common carrier, but that decedent was being carried by defendant as a passenger, pleas alleging that the deceased voluntarily, and without invitation, and without compensation to defendant, boarded the car on which he was riding, constitute a complete defense to counts of the complaint based on simple negligence.

9. *Same; Invitation.*—In pleas alleging that the decedent, without invitation from the defendant, boarded the car on which he was riding, the word "invitation" is a term of considerable breadth, including not only express invitations, but invitations that may be implied from custom, usage or conduct on the part of the carrier, or of its servants, if notorious or actually known to the carrier or its alter ego.

10. *Evidence; Expert; Competency.*—In the absence of any further showing as to knowledge or experience that might have qualified him to give such testimony, a witness was not competent to testify as an expert as to what caused the car to turn over, where such witness testified that after the derailment he immediately examined the railroad track at the point where it occurred, finding a muddy place where two or three ties had sunk in the mud so as to be entirely covered, thus making the outer rail of the curve lower than the inner rail, and that he had been working for the defendant,, a lumber company which owned the track, for more than five years.

11. *Same.*—Proof that a witness who examined the track immediately after the derailment of the train had had several year's experience in working as a section hand on railroads, was not sufficient to qualify him as an expert to testify as to the cause of the derailment.

12. *Same; Opinion; Matters in Issue.*—Where the jury were in possession of all the facts on which a witness's conclusion was rested, if the witness was not an expert, and no expert knowledge was required for an opinion as to the cause of a derailment, the witness's opinion could be of no service to the jury.

13. *Same; Conclusions; Knowledge of Other Persons.*—Testimony that a decedent did or did not know of the dangerous condition of defendant's road which resulted in a derailment causing his death was not admissible, although his knowledge of such conditions may have been relevant.

APPEAL from Coosa Circuit Court.

Heard before Hon. S. L. BREWER.

Action by J. P. Lawrence as administrator, against the Kaul Lumber Company, for the death of his in-

[Lawrence v. Kaul Lumber Co.]

testate, alleged to have been a passenger on one of defendant's logging trains. Judgment for the defendant and plaintiff appeals. Affirmed.

WHITSON & HARRISON, for appellant. As to the duty resting upon defendant and its liability to the deceased, under the facts of this case, see the following authorities.—*B. R. L. & P. Co. v. Adams,* 146 Ala. 271; *Ball v. Mobile L. & Ry Co.* 146 Ala. 309; *Holmes v. Bir. South. Ry.* 140 Ala. 210; *Indianapolis T. Co. v. Lawson,* 143 Fed. 834. Under these authorities, the deceased was a passenger and entitled to that care required of carriers. He was more than a mere licensee.—*Washburn v. N & C. R. R. Co.* 75 Am. Dec. 784; 177 Mass. 365; 105 Tenn. 460; 20 Col. 132; 38 Minn..173; 5 Ind. 339. Perhaps the true situation is stated in 2 LeB. M. & S. 1832. Under the authorities above cited the court was in error in sustaining demurrers to the several counts numbered from 3 to 12 respectively.—*Watson v. E. T. V. & G.* 92 Ala. 320; *M. & E. R. R. Co. v. Thompson,* 77 Ala. 448. If he was an employee this case is controlled by the following cases.—*V. B. & I. Co. v. Jordan,* 143 Ala. 603; *Whatley v. Zenida C. Co.* 122 Ala. 118. Pleas 3 and 4 were subject to the demurrers interposed.—*Pos. T. Co. v. Hulsey,* 115 Ala. 194; *Tutwiler C. C. & I. Co. v. Farrington,* 144 Ala. 157; *Osborn v. Ala. S. & W. Co.* 135 Ala. 571; *G. P. Ry. Co. v. Davis,* 92 Ala. 300. Counsel discuss charges refused, but in view of the opinion it is not necessary to here set it out. The court was in error in declining to permit testimony as to the cause of the derailment.—*Ala. C. C. & I. Co. v. Pitts,* 98 Ala. 295; *L. & N. R. R. Co. v. Sandlin,* 125 Ala. 585.

A. G. & E. D. SMITH, FELIX L. SMITH, and D. H. RIDDLE, for appellee. The decedent was not a passenger.—

*McCauley v. T. C. I. & R. R. Co.* 93 Ala. 356. Nor was he an employee.—46 L. R. A. 730; 55 L. R. A. 908. At most, he was a mere licensee. The court properly sustained demurrers to the several counts.—*Seaboard M. Co. v. Woodson,* 94 Ala. 143; *B. R. & E. Co. v. Baylor,* 101 Ala. *M. & O. v. George,* 94 Ala. 119. In any event, these counts were not supported by the evidence, and hence, no injury intervened. Counsel discuss the rulings on the pleadings, but without citation of authority. They insist that no assignment of error was made to the charges, and hence, this question is not presented for review. They also discuss the rulings on the evidence, but without citation of authority.

SOMERVILLE, J.—While riding on a train of cars operated by the defendant, in April, 1905, plaintiff's intestate was killed by reason of the derailment of the car in which he was sitting; the car after leaving the rails being overturned, and crushing the deceased underneath its weight.

Defendant was not a common carrier of either freight or passengers, and operated no passenger trains. It built and operated a short line of railroad from its logging camp and commissary at Woodbine to the Central of Georgia Railroad at Overbrook, from which point to Sylacauga it used the C. of G. track. Its road was designed for its own use in its logging and lumber business; but a custom had arisen of allowing its hands and employees to ride to and fro on its freight trains for their own convenience, which was in time extended apparently to all persons who sought the privilege.

The deceased was employed or hired by defendant to cut ties on its lands at so much a tie, and at his discretion. Otherwise he had no relations with the defendant or its business. On the occasion of his death, he and

a number of others had ridden up to Sylacauga, and were returning to Woodbine. The derailment occurred on defendant's own track, and the train, consisting of an engine and a single box car pushed in front of it, was moving at a speed of three or four miles an hour. The grade of the road at this point had been constructed about a year before, and the track laid within four months. The grade had not been surfaced up, and a force of hands were then engaged in the work. The evidence is in conflict as to the condition of the track at or near the point of derailment. The plaintiff's evidence tends to show that at or very near such point, which was on a curve, the outer rail sagged for a space of four or five ties, and was thereby made lower than the inner rail; while defendant's evidence tended to show that the sagged space was for only one or two ties, and the outer rail was level with the inner rail.

The complaint is in 17 counts, and to each count numerous grounds of demurrer were interposed. These were sustained as to counts 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12, leaving for issue counts 1, 2, 13, 14, and 17. All of these counts predicate the right of recovery on the defendant's breach to deceased while being carried *as a passenger* on its train and counts 2, 13, and 14 are for wanton or intentional wrong.

To these counts defendant pleaded the general issue, and special pleas 3, 4, and 5, which, in substance, assert deceased' knowledge of the unsafe condition of the track for passengers, and that so knowing he voluntarily boarded the car and exposed himself to the danger, without *invitation from or compensation to the defendant.* Plaintiff's demurrers to pleas 3 and 4 were overruled, and to plea 5 sustained. These various rulings on demurrers to complaint and pleas, with several rulings

on testimony offered by plaintiff, make up the 45 assignments of error.

1. If counts 3 to 12, inclusive, had not been eliminated by demurrer, plaintiff could not possibly have recovered under any of them, since the evidence shows without dispute, and plaintiff's counsel in argument assert, that there was no relationship of master and servant between deceased and the defendant. We are therefore unwilling to consider the theoretical merit of the first 10 assignments of error, because the errors, if any, were entirely harmless.

The 11th and 12th assignments, relating to counts 15 and 16, are not argued, and must be treated as waived.

2. To constitute one a "passenger" who is riding on a train, it is well settled that it is not necessary that the carrier should be a common carrier, nor that the train or car should be used or adapted primarily for carrying passengers.—*Birmingham R., L. & P. Co. v. Adams,* 146 Ala. 267, 272, 40 South. 385, 119 Am. St. Rep. 27. It is also well settled that the person transported is none the less a passenger because he pays nothing for his carriage, or because he rides for his own convenience solely, by the courtesy of, and absolutely without profit to, the carrier.—5 A. & E. Ency. Law, 507; 1 Am. & Eng. Ann. Cas. 451, note; *Indiana Traction Co. v. Klentschy,* 167 Ind. 598, 79 N. E. 908, 10 Am. & Eng. Ann. Cas. 869; *Harvey v. Deep River Logging Co.* (1907) 49 Or. 583, 90 Pac. 501, 12 L. R. A. (N. S.) 131. The essential requirement seems to be only that the passenger is accepted as such—that is, for transportation by the carrier; the trust and confidence thereby induced, on considerations of public policy, imposing upon the carrier the duty to reasonably safeguard, and not negligently injure, the person so carried. In some of its applications, this

rule is undoubtedly a harsh one and the results sometimes seem scarcely consistent with reason and justice.

When, however, the passenger chooses to be transported on a train, not adapted to passenger service, such as a freight or a logging train, while he does not waive the carriers' duty of due care with respect to his safety, he does waive all such precautions, whether in equipment or operation, which are inconsistent with the ordinary use and conduct of such a train, and cannot expect the carrier to change or adapt his service to the extraordinary requirements of a common carrier of passengers. In other words, he assumes the risk of injury from such accidents as are incident to such trains when equipped and operated in the usual way.—*Southery Ry. Co. v. Crowder,* 130 Ala. 256, 263, 30 South. 592; *Harvey v. Deep River Logging Co.,* 49 Or. 583, 90 Pac. 501, 12 L. R. A. (N. S.) 131.

3. But, if the carrier is not a common carrier of passengers, and has not expressly contracted to carry in the particular case, a person entering upon its train and taking passage thereon might be, under various circumstances, either a passenger, a licensee, or a trespasser. If his presence is without the knowledge and consent of any one in charge of the train, he is but a trespasser. If on the invitation, or with the knowledge and acquiescence, of such an agent, not authorized nor shared in by his principal—the carrier itself, or its alter ego—such person would be but a licensee.—*McCauley v. Tenn. Co.,* 93 Ala. 360, 9 South. 611; *Files v. Boston, etc., R. Co.,* 149 Mass. 204, 21 N. E. 311, 14 Am. St. Rep. 411. If on the invitation, express or implied, of the carrier or its alter ego manager, or of any authorized agent, such person would be a passenger. Id.; *Harvey v. Deep River Logging Co.* (1907) 49 Or. 583, 90 Pac. 501, 12 L. R. A. (N. S.) 131.

In the last instance he could recover of the carrier for injuries suffered while a passenger, and proximately caused by the simple negligence of the carrier; while in either of the other instances he could recover under a proper complaint only for the wanton negligence or willful wrong of the carrier, including its failure to exercise due care to avert injury after the danger was apparent. —*McCauley v. Tenn. Co.,* 93 Ala. 356, 9 South. 611.

The complaint does not charge that the defendant was a common carrier, but only that it operated a train on a railway, and that the deceased was being carried by the defendant as its passenger. Pleas 3 and 4 are substantially alike; but plea 3 is, by formal averment, a plea of contributory negligence, while plea 4 is one of assumption of risk. Each plea charges that the deceased "voluntarily, of his own free will and accord, without invitation from the defendant, and without any compensation to the defendant, boarded the car on which he was riding," and which by turning over on him produced his death.

Without regard to the sufficiency of the averments of the pleas to show that deceased had knowledge of the dangerous condition of the track over which he was riding, such as to import contributory negligence or assumption of risk in so riding, we are of the opinion that, if the quoted averments were true, they would constitute prima facie a complete defense to every count of the complaint based on simple negligence, and to such only are they pleaded. This is necessarily so, because one who enters and takes passage on the train of a carrier, not shown to be a common carrier, without actually paying therefor, and without any invitation from the carrier to do so, is at best but a licensee, and not a passenger, and would in law assume every risk of injury not due to the wanton negligence or willful wrong of the carrier or its

servants. If the complaint showed the defendant to be a common carrier, the want of an invitation would be obviously immaterial, and the plea would be insufficient as an answer to the liability charged.

It is to be noted that "invitation," in the sense in which it is here used in these pleas, and as commonly used and defined by law writers in the connection, is a term of considerable breadth, and includes, not only express invitation, but the invitation that may be implied from custom, usage, or conduct on the part of the carrier, or its servants, if notorious or actually known to the carrier or its alter ego.—*A. G. S. Ry. Co. v. Godfrey,* 156 Ala. 202, 218, 47 South. 185, 130 Am. St. Rep. 76; *Brown v. Scarboro,* 97 Ala. 316, 322, 323, 12 South. 289. Upon this question of implied invitation, based on the known custom or usage of the defendant or its agents, much pertinent testimony was introduced on the trial, and this issue as made by the pleading was one of fact for the jury to determine.

Plaintiff's witness, Boss Lennard, had testified that he was on the train at the time of the accident, and at once examined the track at the point of derailment, finding a muddy place where two or three ties had sunk in the mud so as to be entirely covered, making the outer rail of the curve lower than the inner rail. The witness stated that "he had been working for defendant for more than five years last past." Plaintiff asked the witness, "What caused that car to turn over?" Defendant objected on the ground that the answer would be irrelevant and immaterial, and but the conclusion of the witness, which objection was sustained by the court. The answer sought was plainly the witnesses' conclusion as to a matter that involved expert knowledge at least of railroad tracks, if not of running trains. The witness showed no knowledge or experience that might have qualified

him to answer such a question, since, for all that appears, his service with the defendant lumber company may have been restricted to chopping timber in the woods. The question was properly disallowed.

5. As part of the testimony of plaintiff's witness Chandler (presented by written showing) to the effect that the car was caused to turn over because of the lower outside rail, and because of the sagged place under the rail, was excluded on defendant's motion, on the ground that it was immaterial, irrelevant, and a conclusion of the witness. This witness was also present on the train when the accident occurred, and carefully examined the track; his testimony as to its condition being substantially the same as that of the witness Lennard. He stated that he was then in the service of defendant, and that he had had "several years' experience in working as a section hand on railroads."

While judicial knowledge may inform us of the general nature of the work and experience of a railroad section hand, we certainly cannot discover in such a service any satisfactory assurance of expert knowledge of railroad tracks or their sufficiency for the accommodation of rolling stock, or ability to say that the condition of this track absolutely caused the overturning of this car while running at the rate of three or four miles an hour. And, if the witness was not an expert, and no expert knowledge was required for such a conclusion, manifestly his opinion could be of no service to the jury, since they were in possession of all the facts upon which his conclusion rested, and were equally capable of drawing a correct conclusion for themselves. 1 Greenl. on Ev. (16th Ed.) 549. The trial court did not err in excluding this testimony, and also the statements of the witness to the effect that the road at this point was not properly constructed.

6.　Whether or not the deceased knew of the dangerous condition of defendant's road was, of course, a relevant inquiry under the pleadings; but the witness could not testify that deceased did not know of it—a rule of evidence many times declared by this court.—*Bailey v. State,* 107 Ala. 151, 18 South. 234; *W. P. Coal Co. v. Andrews,* 150 Ala. 368, 43 South. 348; *Layton v. Campbell,* 155 Ala. 230, 46 South. 775, 130 Am. St. Rep. 17. The statement was properly excluded.

7.　The giving of the several charges set out in the record is not presented for review by any assignment of error, and we are therefore unable to consider any of them.

The record disclosing no error prejudicial to appellant, the judgment of the circuit court must be affirmed.

Affirmed.

Simpson, McClellan, and Mayfield, JJ., concur.