[S. F. No. 12847. In Bank.—September 26, 1929.]

DAYTON DYER, an Infant, etc., Respondent, v. B. T. McCORKLE et al., Appellants.

Fenton, Williams & Hansen and Frank Kauke for Appellants.

Gallaher & Jertberg for Respondent.

PRESTON, J.—The judgment is affirmed. As justification for this holding we offer the following:

Plaintiff, a minor then twelve years of age, brought this action against defendant corporation as master and the other defendant as its servant, to recover damages for personal injuries suffered by him on April 11, 1926, on account of the alleged negligence of said servant. Negligence was denied by both defendants and contributory negligence. was pleaded; defendant master especially denied liability for the acts for its servant which resulted in said injuries to plaintiff. Plaintiff had judgment. The amount of the verdict, as such, is not questioned; neither is serious contention made that negligence was absent. In fact, no defense of any kind is urged for the defendant servant. The prime issue is the liability, if any, of the master under the facts here appearing.

Defendant corporation owned and operated at the time in question a dairy farm near and milk route in Fresno city. The co-defendant, its employee, was engaged in delivering milk and cream to customers in said city, using therefor an electric truck. For a considerable period of time next prior to said accident, he had practiced the plan of enlisting the aid of young boys in making deliveries to the various homes served with milk and cream. The boy then so engaged would ride upon the running-board of the truck and deliver bottles to one side of the street while the driver delivered them to the other side. In the dispatch of this business if the driver was in his seat prior to the return of the boy to the truck, he would set the truck in motion before the lad actually reached it, the latter jumping on the running-board and seizing an upright bar while the truck was in motion. These boys would be paid small sums of money by the driver as well as given candy to eat and milk to drink.

The older brother of plaintiff had followed this practice for a period ending about six weeks before the accident and during the subsequent six weeks plaintiff had almost daily followed the truck in its afternoon deliveries. He estimated that he made fifty trips with said driver during said period. He had received small sums of money frequently from the driver as well as candy and milk. At the time in question the driver, having no milk to deliver on his side of the street, was in his seat on the truck as plaintiff, returning from a delivery at a home, reached a point some four or five feet distant from the truck. The truck then began to move and in endeavoring to jump to the running-board and to seize said bar to balance himself, plaintiff fell, was run over and his leg was broken and other injuries were received by him.

The question is: Did the master of the truck, under these circumstances, owe the plaintiff the duty of ordinary care? It should be noted that defendant driver did not take the witness-stand nor did the manager or any other officer of the corporation deny knowledge of or assent to this practice on the part of said driver of engaging these young boys to assist him. The manager was simply asked whether the authority of the servant included power to hire assistants in his work. Presumably this question related to the authority of the servant to employ assistants for the company and did not relate to authority in the servant to solicit and procure assistance on his own account.

The contention of appellant is that if authority in the servant to engage the services of boys is conceded, plaintiff becomes an employee of the master and hence comes under the Workmen's Compensation Act; that if the servant had no authority to engage such services, then plaintiff was a mere volunteer to whom the master owed no duty except for injuries resulting from the servant's wilful act.

There is no evidence whatever upon which to conclude that plaintiff was an employee of the master. In attempting to board the truck of defendant corporation, plaintiff was there as one of three classes of persons: A trespasser, a licensee or an invitee. If there without the knowledge or consent of the master or servant, he was a trespasser. If there without the knowledge of the master but with the knowledge of the servant, who had no authority to invite

him, he was a mere licensee. ▆ But if there with the consent of the master or with the consent of the servant having authority, express or implied, to grant the privilege, he was an invitee. As an invitee he was entitled to ordinary care at the hands of the servant and the omission in this particular would be binding upon the master if at the time of infliction of the injury the servant was engaged in accomplishing an object in the line of duties assigned to him by such master.

▆ Whether or not the consent of the master was present is a question of fact. The verdict for plaintiff includes such a finding by the jury if evidence may be found in the record to sustain it. Save this no other question is here in doubt.

Direct evidence of such consent is not required. It may be implied from custom, usage or conduct on the part of the master or servant. (*Brown* v. *Feather River Lbr. Co.*, 203 Cal. 493, 498 [57 A. L. R. 812, 265 Pac. 203]; *Lawrence* v. *Kaul Lbr. Co.*, 171 Ala. 300 [55 South. 111]; *Harvey* v. *Deep River Logging Co.*, 49 Or. 583 [12 L. R. A. (N. S.) 131, 90 Pac. 501]; *Hodge* v. *Sycamore Coal Co.*, 82 W. Va. 106 [95 S. E. 808].)

It may also be true that the nature and character of the work being done by the servant will contribute force to the conclusion that the master knew of and consented to the presence on his premises of a person procured by his servant to aid him in his work. In the case of *Purtell* v. *Philadelphia etc. Coal etc. Co.*, 256 Ill. 110 [Ann. Cas. 1913E, 335, 43 L. R. A. (N. S.) 193, 99 N. E. 899], where employees of a coal company engaged in unloading coal from vessels, hired and paid an eleven year old boy to carry water for them, the custom of so doing having prevailed for many years, the court concluded that said employment of a water boy must have been known to those in charge of the company's yard and that it was a reasonable and economical measure taken by said employees in the performance of their work. The boy was struck and injured by a block hanging from a boom in such a manner as made working conditions unsafe on the coal dock. The court, affirming the judgment awarding him damages, further held that he was on the premises of the company by its implied invitation to do work in which he and the company were interested and

that the company was required to exercise reasonable care for his safety while so working there.

In *Atkins* v. *Lackawanna Transp.* Co., 182 Ill. 237 [54 N. E. 1004], it was held that where the owners of a vessel engaged in carrying merchandise permitted a boy to board it for the purpose of supplying its employees with drinking water, for which purpose they hired him, said owners must exercise reasonable care toward the boy while he was on the vessel.

In *Illinois Cent. R. R. Co.* v. *Hopkins*, 200 Ill. 122 [65 N. E. 656], it was held that one going to a railroad depot to deliver meals to mail clerks on a train, pursuant to their agreement with her, such practice having been followed for years with the knowledge and consent of the railroad company, was not a mere licensee upon the depot platform, but was to be regarded as there by the implied invitation of said railroad company.

Here we have neither a denial by the servant or the master of authority in the servant to engage upon his own account the services of plaintiff in the dispatch of the master's business. Neither do we have a denial by the master of knowledge of or consent to the custom practiced by the servant. Indeed, the custom was so open, notorious and continuous that the master could hardly have been ignorant of it. In fact, the character of the work was such as to make probable acts of this kind on the part of the servant. Viewing the evidence as a whole, coupled with the absence of pertinent evidence in the possession of defendants, we are of the clear view that it is sufficient to sustain the verdict.

In the case of *Giannini* v. *Campodonico*, 176 Cal. 548 [169 Pac. 80], there is not only denial by both master and servant of authority to engage the services of the plaintiff but there is an entire absence of facts upon which to predicate a holding that authority in the servant to engage the plaintiff was granted. Moreover, the nature of the work of the servant was such as to practically preclude the idea that aid or assistance would or should be sought. We, therefore, find no conflict between the holding there made and the one we here make.

There is a second appeal in the case entitled "Winifred Dyer Sibley, Plaintiff and Respondent, vs. B. T. McCorkle

and Frank M. Helm, Inc., a corporation, doing business under the firm name and style of Jersey Farm Dairy Company, Defendants and Appellants,'' Appellate Court No. 6351, Civil, an action for hospital and medical bills incurred in treating the infant plaintiff for injuries received. That case is controlled by the ruling above and such is the stipulation of the parties.

On authority of the conclusion we have announced, the judgment in this cause too is affirmed.

Richards, J., Curtis, J., Waste, C. J., and Seawell, J., concurred.

LANGDON, J., Dissenting.—I dissent. The opinion of the District Court of Appeal, First Appellate District, Division One, heretofore filed herein and written by Justice Parker, *pro tem.*, clearly expresses my views of the legal situation presented by the record and I hereby adopt the following portion thereof as my dissenting opinion:

''The main point presented and urged by appellant goes to the liability of the Dairy Company, the admitted employer, and appellant urges its freedom from responsibility on the ground that the driver was acting wholly without the scope of his employment. Appellant contends that the boy either was an employee of the Dairy Company or he was not; that if he was an employee, his recourse was to the accident commission; that if he was not an employee, he was a mere volunteer. The theory of the trial in the lower court was that there was no employment and the plaintiff insists such to be the case. Appellant seems content, as far as its argument proceeds, to concur in this. However, the main question to be determined is as to the acts and conduct of the servant McCorkle and the scope of his employment and authority. There is no evidence in the record that the Dairy Company ever had any knowledge of the fact that the driver was permitting boys to ride in the truck or to assist in the deliveries. True, the infant plaintiff testified that one time the driver told him that he did not want 'too many kids' on the truck, but as against the Dairy Company this one item of testimony cannot be considered as even the slightest evidence of knowledge or acquiescence on the part of the employer. It is manifest that throughout the

transaction the driver was acting within the scope of his employment in so far as the delivery of the milk might be regarded as the very purpose of such employment. It is further apparent from the record before us that in pursuit of the employment the servant had no authority, express or implied, to employ, invite or permit assistants to aid him in his work. Appellant has put forth many reasons why the judgment of the trial court should be set aside; respondent, on the other hand, urges as many reasons why it should be affirmed. It would serve no useful instructive purpose to set out in detail these various contentions and analyze each —distinguishing, approving or rejecting in turn. . . . From the facts of the case as hereinafter outlined we are of the opinion that the relationship of employer and employee did not arise or result as between the infant plaintiff and either McCorkle or the Dairy Company. That is to say, no such relationship arose or was implied to the extent that the matter of compensation would properly or at all come before the industrial accident commission pursuant to the Workmen's Compensation Act. As between plaintiff infant and the Dairy Company there was no appointment or contract or apprenticeship, express or implied, oral or written; nor was there any authority, express, implied or incident to the performance of his duties, that empowered the driver McCorkle to create, as between the infant and the Dairy Company the relation of master and servant or employer and employee. The term of service was on no schedule, nor was any wage provided therefor. No duty of service was accepted by the plaintiff or any obligation of wage payment fastened upon defendant Dairy Company. The case of *Giannini* v. *Campodonico, supra,* is illustrative of the law applicable. In that case the facts bear a striking resemblance to the case at bar. Plaintiff there was a boy of fourteen years of age and resided across the street from the stable owned by defendant, who employed a colored stableman to take care of the horses and wagons and keep the stable in order. On the morning of the accident the boy saw the stableman leaving in a buggy, and at that time the stableman requested the boy to clean the stable during his absence and promised him a nickel upon his return. A small door which was part of a large sliding door was left open for the boy. Subsequently the boy and two other boys entered

the stable, and while in the premises the large sliding door fell, breaking the leg of the boy who had been engaged by the stableman, and inflicting other injuries upon him. Upon several occasions theretofore the boy had performed errands for the stableman at the latter's request and received some sort of renumeration. The door which fell down had previously been out of order and the stableman had attempted to remedy the defect. The court holds as follows: 'Disregarding the testimony advanced by defendant and looking only to the case presented by plaintiff, no ground for holding the defendant liable appears. It is well settled that as against a trespasser or mere licensee the owner of the property owes no duty to keep the property in safe condition. The only duty is to abstain from wanton or wilful injury. In other respects he who thus enters upon the premises does so at his own risk and subject to all the ordinary risks which attach to such premises. It is only in the case of one who has been expressly or impliedly invited upon the premises that the duty exists to exercise due care not to injure him or permit the premises to be in such condition that injury results. The first question is whether the request of the stableman in this case is such an invitation as to render the boy an invitee. The facts show that the duties of the stableman were of such a menial character that the position could not have carried with it the implied right to delegate the work or hire others to assist in the same. In fact, the duties were such that the stableman could very easily perform them without aid. It must, therefore, be held that the request to do the work was unauthorized and could not impose any additional liability upon the defendant. The stableman's promise to pay the boy to clean the stable could not make the latter an invitee. Neither can paid services raise such a relation, especially where it is not pretended that they were brought home in any way to the defendant. The fact that respondent is a minor does not give him any greater rights under the circumstances. "That might excuse him from concurring negligence, but cannot supply the place of negligence on the part of defendant or confer an authority on one who has none. It may excite our sympathy but cannot create rights or duties which have no other foundation." ' This ends

quotation from *Giannini* v. *Campodonico,* 176 Cal. 548 [169 Pac. 80.]

"In the case of *Curry* v. *Addoms,* 166 App. Div. 433 [151 N. Y. Supp. 1017], where plaintiff had been engaged by a janitor who was without authority to engage any other person, the court says: 'It is also urged that the plaintiff was a licensee. If so, she must trace her license to the defendant; but as he knew nothing of her, and was not bound to do so, and as the janitress, by her contract with plaintiff, had no right to commit the defendant, he owed her no duty in the matter of steps.' The case of *Higbee Co.* v. *Jackson,* reported in 101 Ohio St. 75 [128 N. E. 61], is exhaustively annotated in 14 A. L. R., commencing at page 131. The action concerned the rights of a boy who had been invited to ride in a truck. The invitation was extended by the driver, without the knowledge of his employer, and accepted. The court says: 'The grant of permission, as far as the company was concerned, was a mere nullity. The most that can be said is that the boy had no right upon the truck and that when he got on he was a trespasser as far as the defendant was concerned.' The foregoing cases can in many respects be directly applied to the case at bar. The work of the truck driver was menial work, as the term goes. Surely it is demonstrated that it was not work that required assistance, inasmuch as it was work that a 12-year old child could do, as far as the delivery of the milk itself was concerned, and the assistance was not rendered in the driving of the truck. Relying, also, on the Campodonico case, we conclude that the boy was not an invitee. Therefore, being neither an employee, nor a licensee, nor invitee, there is but one other status in which he can be placed, and that is he was a trespasser as far as the defendant Dairy Company was concerned. As such trespasser he was entitled to protection from wilful or wanton injury. (*Sessions* v. *Southern Pac. Co.,* 159 Cal. 599 [114 Pac. 982]; *Higbee Co.* v. *Jackson, supra.*) If the driver of the truck had permitted the boy to be seated upon the truck and after driving some distance had suddenly become mindful of his breach of duty he would not have been permitted to recklessly push the boy off and injure him. Likewise, seeing the boy in a dangerous position he would not be permitted ruthlessly and with no regard for the boy's safety,

to run him down. Notwithstanding the confused and indiscriminate use at times of the terms 'negligence' and 'willfulness' by judges and text writers, it is certain that the weight of authority supports the view that these terms have a distinct and well-defined meaning which is clearly pointed out in *Holwerson* v. *St. Louis & S. Ry. Co.*, 157 Mo. 216 [50 L. R. A. 850, 57 S. W. 774], and accepted by California Courts in *Tognazzini* v. *Freeman*, 18 Cal. App. 474 [123 Pac. 540]; *Taylor* v. *Pacific Elec. Ry. Co.*, 172 Cal. 645 [158 Pac. 119]. Willful misconduct means something different from and more than negligence, however gross. The term 'serious and willful misconduct' is described by the supreme court of Massachusetts as being something 'much more than mere negligence, or even gross or culpable negligence.' To constitute 'wilful misconduct' there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the danger to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. (*Helme* v. *Great Western Milling Co.*, 43 Cal. App. 416 [185 Pac. 510].) Wanton negligence, likewise, means something in addition to mere actionable negligence. To constitute wantonness in the eye of the law, it is not necessary to allege or show an intent to injure. Gross negligence, or what is sometimes called the 'last' negligence may be the equivalent of willful or wanton negligence; and where the conduct of defendant exhibits reckless indifference to probable consequences, with knowledge of facts and circumstances likely to result in injury, it becomes wanton negligence. (*Kramm* v. *Stockton R. R. Co.*, 3 Cal. App. 618 [86 Pac. 738].) 'Recklessness' and 'wantonness' are stronger terms than ordinary negligence, and mean a disregard of security equivalent to bad faith and a willful or malicious disposition to injure. To constitute wantonness there must be a design, purpose or intent to do wrong or cause the injury, but a recklessness amounting to an utter disregard of consequences will supply the place of a specific intent. (*Chicago, R. I. & P. Ry. Co.* v. *Lacy*, 78 Kan. 622 [97 Pac. 1025]; see, also, Words and Phrases, Second Series, p. 1236 et seq.) Without going further into the various constructions placed upon the term 'wanton,' it will suffice to say that to lawyer and layman alike the word,

in common usage, immediately suggests something of complete abandonment of care. We are unable to conclude that the negligence here established on the part of the driver of the milk truck can be characterized as either willful or wanton in the sense contemplated by the law applicable. To so hold would be disregarding the plain import of the terms. The boy had been doing the same thing for over a month and a half and his brother before him for some months. Day after day exactly the same procedure was followed. If the driver was on the truck before the boy got back he would start up and move to the next house or next point of delivery. The boy would jump on and ride to that point. This boy was of the age of twelve years and normal, as far as appears, for that age. The truck was stopped at a distance of four feet, which demonstrates the speed at which it was traveling. We do not mean to say that because a course of conduct, such as a boy jumping on a truck, had been pursued for some months, that fact alone would render it free from negligence. But it is obvious that knowledge and experience serves the purpose of illustrating what is safe and what is dangerous, because these factors serve to a great extent in pointing the course of the future. There is not a scrap of testimony from which it can be inferred that the driver knew the boy was getting on the truck or was attempting to get on. One witness testified that the boy shouted to the driver to go ahead, but the boy denied so doing. Taking either view of this, our conclusion would not be affected. If it could be held that the boy assured the driver it was all right to proceed then the driver might reasonably assume the boy in a position of safety. Respondent contends that inasmuch as the complaint alleged that the driver willfully, wantonly and recklessly drove the truck, and that the plaintiff was injured by reason of the wantonness, willfulness and recklessness of the defendants, that the verdict of the jury, being a general verdict, imports a finding for plaintiff upon these issues. To sustain this contention, it is necessary that there be some evidence supporting the allegations. Surely, if plaintiff had offered no evidence, at all, save as to the extent of his damage, and had offered no evidence at all as to the negligence, nor had defendant, a verdict for plaintiff would find no support in the mere allegations of the complaint. In the case of *Hig-*

*bee Co.* v. *Jackson, supra,* the entire subject is completely annotated. Many authorities have been collected in the note, and from a reading of the cases it becomes evident that the allowing of the rights of even a trespasser to the person invited by the servant, without the scope of his employment, is a question of much dispute, and where granted is a concession, and extension of the doctrine of *respondeat superior.* The doctrine of *respondeat superior* had its origin in the consideration of public policy. Out of the necessities of new social and economic conditions it has been developed and extended, and its growth and application have been influenced and directed by these conditions. The rule itself and its development are examples of the process by which the judgment of society as to what is necessary to the public welfare has from time to time been expressed in juristic form. But in extending the doctrine we cannot destroy it and deprive the master of all rights. If an employer's business and fortune were committed wholly to a servant or employee without regard to the nature or scope of the latter's employment, modern business would practically cease. The law has been exceedingly generous as to the plaintiff in cases such as in the instant case to give him the protection it has, in so far as it renders the master liable for a situation over which he has so little control. The basis of this solicitude of the law is the principle which is sometimes characterized as the humanitarian doctrine which is only invoked to prevent willful or wanton injury.

"We are of the opinion that by no specious reasoning should the doctrine be extended. By giving such loose or careless construction to the terms 'willful' and 'wanton' as is sought here would be to destroy entirely any distinction between the various degrees of negligence. To sustain the contention of respondent here would be to hold affirmatively that wanton and willful misconduct means lack of ordinary care and would be in direct defiance of authority and destruction of principle. The court below, under the facts should have granted the defendant's motion for a nonsuit."