[No. 12852.   Department One. — June 12, 1890.]

## CATHERINE O'CALLAGHAN ET AL., RESPONDENTS, v. GEORGE BODE ET AL., APPELLANTS.

NEGLIGENCE — THROWING HEAVY BALES INTO PASSAGE-WAY OF WARE-HOUSE — FAILURE TO GUARD ENTRANCE — ACTION FOR DEATH. — The throwing of heavy bales by employees in a warehouse into a passage-way leading from one outer door to another, without sufficient precautions to guard each entrance, or to notify all persons using the passage-way of the danger, is negligence, and the owners of the warehouse are liable to an action for the death of a visitor to the warehouse, caused by such negligence.

ID. — PARTIAL OBSTRUCTION OF SMALLER ENTRANCE — WARNING OF DANGER. — The guarding of the main entrance to such warehouse, and the partial obstruction of a smaller entrance at the other end of the building by bales thrown near it, which did not block the whole of the passage, but left room for a man to pass by them, would not be a sufficient warning of danger to persons in the habit of using the passage, to relieve the warehouseman from the charge of negligence in throwing heavy bales into the passage-way, thereby causing the death of a visitor, who entered through such smaller entrance.

ID. — CONTRIBUTORY NEGLIGENCE — UNACCUSTOMED USE OF SMALLER ENTRANCE. — The fact that such visitor was in the habit of entering the warehouse upon business by use of the main entrance, which, upon the occasion of his death, was guarded by a suitable lookout, and that on that occasion he approached the warehouse office though the smaller entrance, which was insufficiently guarded, did not constitute contributory negligence on his part, there being nothing to indicate to him that the use of that entrance was forbidden or dangerous.

ID. — FAILURE TO APPRECIATE SHOUTS OF WARNING. — The failure of such visitor to appreciate shouts of warning just as the heavy bale by which he was killed was toppling over into the passage-way, and after it was beyond control, and the ineffectual attempt of the visitor to run past before it fell, did not constitute contributory negligence.

ID. — LIABILITY OF OWNERS OF BONDED WAREHOUSE — GOVERNMENT AGENT — INSTRUCTIONS. — When the evidence shows conclusively that the owners of a warehouse are liable for the negligence of the servants employed therein, the fact that it was a bonded warehouse, and that the usual government agent was on the premises to look after the duties, is immaterial; and as the court might have instructed the jury that the defendants were liable for any negligence that occurred, any error in stating certain conditions under which they, and not the government agent, were liable, is immaterial.

ACTION FOR DEATH — PLEADING — DEMURRER — LEGAL CAPACITY TO SUE. — In an action for death caused by negligence, brought by the mother, brothers, and sisters of the deceased, a demurrer, on the ground that plaintiffs had not legal capacity to sue, is too broad, and should be over-ruled, it appearing that the mother had the right to sue as sole heir of the deceased.

ID. — MISJOINDER — WANT OF SPECIFICATION IN DEMURRER — WAIVER. — A demurrer specifying generally a misjoinder of parties plaintiff, and a misjoinder of causes of action, in the language of the statute, without specifying *wherein* the alleged misjoinders consisted, is insufficient, and does not raise the objection that the brothers and sisters of the deceased were improperly joined as plaintiffs. Objection appearing upon the face of the complaint is waived by failure to specify it as a ground of demurrer, and cannot thereafter be urged.

ID. — WAIVER OF OBJECTION TO MISJOINDER — INSTRUCTIONS. — The objection to such misjoinder of parties appearing upon the face of the complaint is waived by failure to specify it properly as a ground of demurrer, and cannot be thereafter urged; nor will objections based upon such misjoinder, when urged to the giving or refusal of instructions, be considered.

ID. — DAMAGES NOT EXCESSIVE. — Where it appears that the deceased, whose death was caused by negligence, was a young man of good habits, and was the sole support of a widowed mother and her minor children, to whom he gave out of his earnings forty or fifty dollars a month, a verdict for three thousand dollars damages is not excessive.

ID. — PROOF OF HEIRSHIP — VARIANCE. — In proving that the plaintiffs, in an action for a death caused by negligence, consisting of a widowed mother and four minor children, were the only heirs at law of the deceased, a slight variance between the complaint and evidence, in stating the sex of one of the minor children, is not of sufficient importance to warrant a reversal of a verdict and judgment for damages in favor of the plaintiffs.

PLEADING — GENERAL DEMURRER. — A demurrer upon the general ground that the complaint does not state facts sufficient to constitute a cause of action is not sustainable, if the complaint states a cause of action in favor of any one of several plaintiffs.

NEW TRIAL — IRREGULARITY — TEMPORARY ABSENCE OF JUDGE — WAIVER OF OBJECTION. — The temporary absence of the judge from the court-room during a portion of the trial cannot be assigned as error, though it may have been an irregularity; but no objection thereto can be consid-

ered, if the motion for new trial is not made on the ground of irregularity, and no objection to the temporary absence of the judge was urged at the time.

ID. — OBJECTIONS TO EVIDENCE — NON-RESPONSIVE ANSWER — MOTION TO STRIKE OUT. — An objection to questions which are proper, and call for relevant and competent testimony, upon the ground that they are irrelevant, etc., does not raise the objection that a portion of an answer is non-responsive, the only proper remedy for which is a motion to strike out the non-responsive matter.

ID. — ERROR WITHOUT PREJUDICE. — The admission of irrelevant evidence, which could not have injured the objecting party, or the exclusion of proper evidence, which was cured by the subsequent admission of substantially the same evidence objected to, does not constitute ground of new trial.

ID. — MISTAKE IN INSTRUCTION. — An evident mistake in an instruction in the use of the word "plaintiff," instead of the word "decedent," in an action for a death caused by negligence, which is a mere inadvertence that could not have misled the jury, will not warrant a new trial.

GUARDIAN AD LITEM — PROOF OF APPOINTMENT — PUTTING CERTIFICATE IN EVIDENCE. — The handing of the certificate of appointment of a guardian *ad litem* for infant plaintiffs to the clerk as an exhibit, with the declaration: "This is the paper in reference to the guardian *ad litem*," without further remark by either party, though not a formal way of putting the paper in evidence, will be considered as putting it in evidence, it appearing that all parties understood that it was in evidence.

ID. — APPEAL — ERROR NOT APPEARING. — It is incumbent upon the appellant, who objects to the sufficiency of the evidence to prove the appointment of a guardian *ad litem*, to show the contents of a paper in evidence relating thereto, and to make it affirmatively appear that the paper was not a complete or valid appointment; and in the absence of proof of its contents, it will be presumed to be sufficient to support the verdict and judgment.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*W. W. Davidson*, for Appellant.

*J. D. Sullivan*, and *Henry McCrea*, for Respondents.

GIBSON, C. — This was an action against the owners of a warehouse to recover damages for the death of one Francis J. O'Callaghan, which is alleged to have been

caused by the negligence of the defendants. The plaintiffs had a verdict and judgment, and the defendants appeal.

The general features of the case are as follows: The warehouse was oblong in form, and had a wide door and passage at one end, and a small door and passage at the other. These two passages were parallel with each other, and at right angles to the length of the building. Between them was a large room or space, in which bales of merchandise, etc., were so piled as to leave a passage or "gangway" connecting the two passages above mentioned. The office was on the passage-way leading from the small door. On the morning of the accident the employees were engaged in throwing bales of bags from the top of the pile into the gangway. The deceased was in the habit of coming to the building to deliver a publication called the Guide. He usually entered by the main entrance (the large door), came down the gangway to the passage leading to the small door, and put up the Guide in a room adjoining the office. On the day of the accident, however, he entered by the small door, put up his paper in the usual place, and started to go out through the gangway to the main entrance. The men engaged in throwing down bales into the gangway did not see him until it was too late. He was struck by a bale weighing between six and seven hundred pounds, and almost instantly killed.

The main position of the appellants on the merits is, that there was no negligence on the part of the defendants, or if there was, that there was contributory negligence on the part of the deceased.

We think that the evidence shows that the defendants were guilty of negligence. The gangway was a place through which persons having business at the warehouse were accustomed to pass. It was the mode of reaching the office from the passage-way at the main entrance. It was the way "that everybody, strangers as well as

others, in the employ of Bode & Haslett, used in going to the office." And it was the usual route of the deceased in his regular visits to the place where he was in the habit of putting up the Guide. The throwing of heavy bales into such a gangway made it a place of danger. It was a case in which precautions were necessary. Especially is this true under the circumstances of the case. According to the foreman (who was in the employ of the defendants at the time of the trial), "It was not possible for the man standing up there on the top of the bales to see from his position where the bales would land when they came down. He knew they would land in the passage-way. That was the only place for them to land, down below there. He could not see where they were going to hit." The employees of the defendants seemed to have felt that some precautions were necessary; for a lookout was stationed at the main entrance. This was well enough for that entrance. But some precaution should have been taken for the other entrance. The only thing done to the latter entrance, however, was to throw down a couple of bales near that end of the passage. These, however, did not block the whole of the passage, but left room for a man to pass by them. And we think that such a partial obstruction of such a place would not be a sufficient warning to persons who were in the habit of using the passage. It would have been a very simple matter to have drawn a rope across that end of the gangway, or to have posted a notice of danger there, or even to have stationed a lookout there, as was done at the other entrance. The want of such a precaution, under the circumstances, seems to us to have been negligence. And the fact that other warehousemen were in the habit of acting similarly does not excuse the defendants.

The deceased was not guilty of contributory negligence. He came to the warehouse upon a matter of business. It is true that he was in the habit of entering by the main entrance. But the other, though furnished with a

lock, was kept unlocked; and though it was not much resorted to, it was sometimes used by the employees, and occasionally by teamsters. The fact that the deceased used it on the day of the accident admits of the inference that he knew about it; and there is no pretense that either he or any one else was forbidden to use it, or notified that it was dangerous to do so. We see nothing in the evidence to show that the entrance by the small door constituted negligence on his part. Being in the building, and having put up the Guide as usual, it was perfectly natural and proper for him to attempt to go out. through the gangway. That was the passage which he and others ordinarily used; and, as above stated, its partial obstruction by a couple of bales was not a sufficient indication that it was dangerous.

Nor was he guilty of negligence in failing to appreciate the situation when the employees shouted to him. These shouts were just as the bale was toppling over, and after the man on the top of the pile had lost control of it. The deceased evidently heard the shouts, but did not know just what to make of them. "He made a kind of look. He still walked just as fast as he could; he came right under the bale, making a kind of look up, so fast as he could run." The interval between the shouts and the time the huge mass came bounding down the passage could not have been great; and we do not think that, under the circumstances, an ordinarily prudent and self-possessed man could be expected to do any better.

Quite a number of other points are made which will be briefly noticed.

It is contended that the demurrer to the complaint should have been sustained.

The action was brought by the mother of the deceased, and his brother and sisters. The counsel for the appellants says that "the complaint discloses that the plaintiff Catherine O'Callaghan, mother of the decedent, is his sole heir," and argues that the other plaintiffs did not

have legal capacity to sue. But the demurrer is not drawn so as to present that question. It says that "the plaintiffs" have not legal capacity to sue. And as it is admitted that one of them had capacity to sue, this ground of demurrer was too broad, and was properly overruled.

It is also said that there was a misjoinder of parties plaintiff, and a misjoinder of causes of action. These points, like the foregoing, are based upon the alleged want of right in the plaintiffs other than the mother of the deceased, but the demurrer does not specify *wherein* the alleged misjoinders existed. It is not sufficient for a demurrer on either of these grounds to simply follow the language of the statute.

As the deceased left neither wife, issue, nor father surviving him, his mother is his sole heir, under section 1386, subdivision 2, of the Civil Code. The complaint shows these facts, and also that the deceased was killed through the negligence of defendants, by which his mother was damnified. This being so, the demurrer, upon the general ground that the complaint does not state facts sufficient to constitute a cause of action, was properly overruled, because a general demurrer is not sustainable if the complaint states a cause of action in favor of any one of several plaintiffs.

It is contended that there were errors in rulings upon evidence.

It is objected that the judge was absent from the court-room during a portion of the trial. This, however, was not an "error." It may have been an irregularity; but the motion for new trial was not on that ground. In the next place, the counsel for the appellants made no objection to the temporary absence of the judge. (See Hayne on New Trial and Appeal, sec. 27.)

After the sister of the deceased had given several answers, part of one of which was not responsive to the question, the counsel for the defendant said: "I object to the questions, on the ground that they are irrelevant,"

etc. The court stated that it should have to allow them, and the examination drifted to something else. If the counsel had desired the non-responsive part of the answer stricken out, he should have made a motion to that effect. The question was proper, and called for relevant and competent testimony.

The fact that the deceased "once" owned a route on the Examiner, and sold it for one thousand dollars, was probably irrelevant, but we do not see how it could have injured the defendants.

The question objected to at folio 121 was substantially answered by the response to the next question. Therefore, if there was any error in sustaining the objection, it was cured.

A further contention is, that there was error in the instructions to the jury.

The first point under this head seems to be based upon the ground that there was a misjoinder of parties plaintiff. But there was no issue as to this. The facts appeared in the complaint, and hence the objection was one that should have been taken by demurrer. This was not done, as already shown in passing upon the points in the demurrer, and in consequence was waived.

The warehouse was a bonded warehouse, and there was the usual government agent on the premises to look after the duties. The evidence showed conclusively that the defendants were the persons liable for any negligence in relation to the occurrence in question. The court might properly have given a direct instruction to that effect. It did not give such instruction, but told the jury that the defendants, and not the government agent, were liable under certain conditions. It is claimed that in stating the conditions, the court omitted an important one. But inasmuch as the court might have instructed the jury that the defendants were liable for any negligence that occurred, the error, if such it be, was clearly immaterial.

The next point is based upon the use of the word "plaintiff" instead of "decedent," in the instruction marked "XX." It is apparent, however, that this was a mere inadvertence, and that it could not have misled the jury.

It is further claimed that the court erred in refusing to give certain instructions to the jury requested by defendants. These instructions number thirty-eight in all; and the only argument in relation to them is based upon the idea of the misjoinder of the parties plaintiff, which has already been disposed of. Hence we do not feel called upon to examine the instructions any further.

It is suggested that the damages given are excessive. The deceased was a young man of twenty-three, of good habits, and was the sole support of his widowed mother and her minor children, to whom he gave out of his earnings forty or fifty dollars a month. The verdict was for three thousand dollars. We do not think that this amount was excessive.

It is urged that there was no evidence in support of the allegation that a guardian *ad litem* for the infant plaintiffs was appointed. We are by no means sure that the court which appoints a guardian *ad litem* to conduct a particular suit will not take judicial notice of his appointment, so far as the purposes of that suit are concerned. But it is not necessary to express an opinion upon this point. It appears in this case that during the trial the plaintiff's counsel handed a paper to the clerk, saying: "This is the paper in reference to the guardian *ad litem.*" Nothing else was said by either party, and presumably the clerk took charge of the paper, as he would in the case of any exhibit in the case. This is not a very formal way of putting a paper in evidence. But we think that all the parties must have understood that the paper was in evidence, and consequently that it must be held to be so. (*Wright* v. *Roseberry*, 81 Cal. 87.) It therefore appears that a paper in relation to the

guardian *ad litem* was in evidence. What were its contents? It certainly was incumbent upon the appellants to show what the contents were. Notwithstanding that, it was not a most complete and perfect appointment. The presumption is in favor of the judgment, and the party alleging error must make it affirmatively appear. (For analogous applications of this rule, see *Clark* v. *Sawyer*, 48 Cal. 141, 142; *People* v. *Grundell*, 75 Cal. 304.)

It was argued that the evidence is insufficient to show that the plaintiffs were the only heirs at law of the deceased. But we think that these facts sufficiently appear. The witness Mary Kepple testified as follows:—

"Q. You are the sister of Frank O'Callaghan, *who was killed?* A. Yes, sir; I am.

"Q. Is your father living or dead? A. My father died the 23d of March, six weeks before Frank was killed.

"Q. Is your mother living now? A. Yes, sir; she is sick in bed.

"Q. Who was your support up to the time of the death of Frank O'Callaghan? A. Frank was the sole support. . . . . He brought in fourteen dollars a week from the Examiner, and would turn all of that money in to his mother, for her and the four little children,—a brother thirteen years old, a little girl going on twelve; the other baby is going on six; this little boy is two and a half years old. He supported all of them. My mother is living; she is in bed, sick. . . . .

"Q. Frank was unmarried,— had no wife? A. No; single. . . . . He was twenty-three years and ten months old at the time he died. He worked for the last thirteen or fourteen years for the family."

It is true, there was a slight variance between the testimony of this witness and the allegations of the complaint respecting the minor children. She says there were two boys, one girl, and another, whose sex she failed to state, while it is alleged that such children consisted of one boy and three girls, but we do not deem

this of sufficient importance to warrant a reversal. This same witness did not say whether her mother and the minor children were the same persons who were named as plaintiffs in the complaint, nor that her deceased brother never had been married, but we think the jury properly inferred these facts from what she did say.

We are unable to perceive any prejudicial error in the record, and therefore advise that the judgment and order appealed from be affirmed.

FOOTE, C., and HAYNE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

Hearing in Bank denied.