[Civ. No. 2327.   Third Appellate District.—November 17, 1921.]

## NICK ALEXSON, Respondent, v. L. P. STEWARD et al., etc., Appellants.

[1] PLEADING—ACTION FOR BREACH OF CONTRACT—CAPACITY IN EXECUTION—AMENDMENT OF COMPLAINT—STATUTE OF LIMITATIONS.—An amended complaint in an action for damages for breach of a contract alleging that the contract was executed by an individual doing business under the name of a certain company ·in his own behalf did not state a new cause of action so as to be barred by the statute of limitatons, where the original complaint alleged that the contract was executed by such person as president on behalf of a corporation which had forfeited its charter and in which such person owned all of the capital stock.

[2] CONTRACT—SHIPMENT OF GRANITE—SINKING IN TRANSIT—RAISING OF CARGO BY SHIPPERS—LIABILITY FOR WORK.—A contract to transport a quantity of granite providing for responsibility for all damage suffered by the shippers constitutes a sufficient consideration for a subsequent arrangement for the raising of the cargo by the shippers after the barge on which it was being carried had sunk, and the carrier is liable for the reasonable value of such work.

[3] CORPORATIONS — FORFEITURE OF CHARTER — CONTINUANCE OF BUSINESS BY SOLE STOCKHOLDER—VALIDITY OF CONTRACT.—A contract with a corporation executed after the corporation had forfeited· its charter for nonpayment of its license tax is not void where the person executing such contract was the president of the corporation and owned all of the capital stock and after the forfeiture he continued the business as an individual but under tᶜc corporate name.

APPEAL from a judgment of the Superior Court of Sacramento County.  Peter J. Shields, Judge.  Affirmed.

The facts are stated in the opinion of the court.

W. E. Kleinsorge for Appellants.

Johnson & Lemmon for Respondent.

FINCH, P. J.—The defendants appeal from a judgment against them in favor of plaintiff.

The original complaint alleged that the defendants were copartners "engaged in the business of transporting freight

as a public carrier, on the Sacramento River''; that the Leed Granite Company was a corporation; that in July, 1917, the Leed Granite Company delivered to defendants a shipment of granite, under an agreement whereby the defendants agreed to transport the same from Sacramento to Hunter's Point; that the ''defendants so negligently and carelessly handled the barge upon which said granite was being transported that said barge sunk in the Sacramento River on or about July 5, 1917''; that thereafter the defendants employed the said Leed Granite Company to raise the cargo of granite and agreed to pay all ''expenses incurred in raising the said granite as aforesaid and in putting the said granite in the condition the granite was in prior to the sinking of the said barge''; that the Leed Granite Company performed said work at a cost of $1,570.86; and that prior to the commencement of the action the Leed Granite Company assigned its claim for such expenses to the plaintiff.

The defendants answered, denying most of the allegations of the complaint, and alleging that on the fifth day of March, 1917, the charter of the Leed Granite Company was forfeited by failure to pay its corporation license tax.

On September 15, 1919, the plaintiff, by leave of the court, filed his amended complaint in substance the same as the original complaint, except that the name of Werner Leed was substituted for that of Leed Granite Company. The defendants moved the court to strike the amended complaint from the files on the ground that it ''wholly changes the cause of action and states an entirely new cause of action, and that said cause of action as set forth in said first amended complaint is barred by the provisions of subdivision 1 of section 339 of the Code of Civil Procedure'' and subdivision 3 of section 340. The motion was denied and the defendants answered, denying the material allegations of the amended complaint except the allegation that the defendants are partners, and setting up the statute of limitations as in the motion.

The evidence shows that Werner Leed owned all of the capital stock of the Leed Granite Company; that the corporation forfeited its charter March 5, 1917, by failure to pay its license tax; that thereafter Werner Leed continued the business in the corporate name and that he was the only

person interested therein; that on April 30, 1917, the following contract was executed:

"Office and Quarry

"Rocklin, Cal., April 30, 1917.

"Articles of agreement made and entered into by and between Leed Granite Company of Rocklin, party of the first part, and Steward Bros. of Sacramento, party of the second part.

"Witnesseth: That the party of the second part agrees to handle all granite in three shipments for Union Iron Works Dry Dock from cars on Barge and deliver said granite from Sacramento to Hunters Point, San Francisco Bridge Co. to unload Barge as soon as possible.

"Party of the first part will furnish hooks for handling said granite.

"Party of the second part agrees to secure granite well on Barge so as to avoid damage in transit, and shall be responsible for any and all damage done person or property by reason of the prosecution of his work.

"Party of the first part agrees to pay sum of two dollars, ($2), per ton payment to be made on delivery of granite at Hunters Point. In witness whereof, the parties have hereunto set their hands this 30th day of April, 1917.

"LEED GRANITE Co.

"WERNER LEED

"President.

"STEWARD BROS.

"By J. L. STEWARD."

The evidence further shows that the defendant's barge, loaded with granite, was sunk as alleged, but the court found that the defendants were not negligent in the matter. Thereafter Werner Leed asked the defendants to raise the granite, and one of the partners, J. L. Steward, according to Leed's testimony, said: "I want to find what it was going to cost, and which was the easiest way to get it up," that he would let Leed know "as soon as he got information." After various conversations between them, Steward said to Leed, about July 17th, or 18th or 19th: "Yes, you can go ahead; you people may do better than I can; I never heard anything about my man; maybe you can be able to do better than I can, if you can get things going on, go ahead."

Leed asked for "some kind of writing" and Steward executed and delivered to Leed the following:

"Sacramento, Cal., July 18, 1917.

"Leed Granite Company,

"Rocklin, Cal.

"Gentlemen: In response to your inquiry, will state that it is perfectly agreeable with us for you to make arrangements for raising your granite from the river at Vorden.

"Respectfully yours,

"STEWARD BROTHERS,

"BY J. L. STEWARD."

Leed proceeded thereafter to raise the granite and put it in its former condition at an expense of the amount sued for and assigned his claim therefor to the plaintiff. The defendants believed at all times that their transactions were with the Leed Granite Company rather than with Werner Leed as an individual.

[1] The plea of the statute of limitations is based upon the assumption that the amended complaint states an entirely new cause of action. The original and amended complaints, however, are founded upon the same contract. The cause of action in each arose out of the same state of facts. The original complaint was drawn on the theory that the contract sued on was executed by Werner Leed as president on behalf of the Leed Granite Company. The amended complaint was drafted on the theory that the same contract was executed by Leed, doing business under the name of the Leed Granite Company, in his own behalf. The cause of action was the same in both. (*Walsh* v. *Decoto*, 49 Cal. App. 737 [194 Pac. 298]; *Thompson* v. *Southern Pac. Co.*, 180 Cal. 730 [183 Pac. 153].)

[2] The court found that the defendant partnership was a "public carrier." The appellant assails this finding as unsupported by the evidence. Leed testified: "I asked him [J. L. Steward] if it was a fact he was in the business, transportation . . . and he says: 'Yes, I handle that kind of business.' . . . He say: 'We have regular transportation, have lots of barges, we can handle all granite.' Q. Transportation where? A. 'All over. Q. You mean on the river A. On the river." J. L. Steward testified: "My brother and I operated gasoline towboats, barges on the Sacramento and San Joaquin Rivers. . . . We made contracts and agree-

ments for miscellaneous hauling from different points, towed barges and towboats; turning steamers, and did miscellaneous work''; the witness further testified that they did not operate between fixed points or make fixed trips, or have fixed charges, or ''undertake to do any and all business that might be submitted.'' Under the provisions of the Civil Code, sections 2168 to 2194, relative to common carriers, it may be doubtful whether the foregoing evidence is sufficient to uphold the finding that the defendant partnership was a common carrier. The finding, however, is not necessary to the conclusion reached by the court and is material only upon the question of consideration for the contract authorizing Leed to raise the cargo. If the defendants were common carriers they were absolutely liable, under the circumstances disclosed, for the injury to the granite. (Civ. Code, sec. 2194.) Such liability would afford sufficient consideration for the agreement with Leeds last referred to. But if the defendants were not common carriers, the contract under which they undertook to carry the granite imposed upon them the same measure of liability as that provided by section 2194. There was no conflict in the evidence as to the execution of that contract or its terms. It provided: ''Party of the second part agrees to secure granite well on barge so as to avoid damage in transit, and *shall be responsible for any and all damage done person or property by reason of the prosecution of his work.*'' The liability thus assumed furnishes sufficient consideration for defendants' employment of Leeds to raise the granite.

[3] Appellants urge that the contracts with the Leed Granite Company are void because executed after the corporation had forfeited its charter for nonpayment of its license tax. The evidence shows that Leed was the owner of all the capital stock of the corporation and that after the forfeiture of its charter he continued the business as an individual, but under the corporation name. In the case of *Ginaca* v. *Peterson,* 262 Fed. 904, after the corporation had forfeited its charter by failure to pay its license tax in this state, the president and owner of all the capital stock of the corporation executed a deed conveying property of the corporation. The court said: ''It is said that a stockholder of a corporation which has forfeited its charter cannot as a

corporation convey real property of the corporation, and that one not shown to be a director in office at the time of the forfeiture of the charter of the corporation cannot properly execute a deed as president and trustee. The evidence, however, shows that at the time of the execution of the deed of March 10, 1915, S. W. Parker was the president of the Hornitos Gold Mining Company and owner of all of the capital stock of the corporation. We believe that he had ample power to do with the property of the corporation and to make conveyance of property, and that it is not in the power of any one to complain of any disposition made by Parker of the property, except, of course, creditors existing at the time of the disposition. (*Havemeyer* v. *Superior Court*, 84 Cal. 327 [18 Am. St. Rep. 192, 10 L. R. A. 627, 24 Pac. 121]; Civ. Code, sec. 400; *Reed & Co.* v. *Harshall*, 12 Cal. App. 697 [108 Pac. 719]; *Kelley* v. *Campbell*, 134 Cal. 175 [66 Pac. 220]; *Deming* v. *Maas*, 18 Cal. App. 330 [123 Pac. 204].)" In *Willey* v. *Crocker-Woolworth Nat. Bank*, 141 Cal. 513 [75 Pac. 108], it is said: "There is no law of this state which prevents the use of a trade name by an individual, and in the absence of any such prohibition an individual may conduct business under any designation he sees fit." While the appellants believed that they were contracting with the Leed Granite Company, and not with Werner Leed individually, their rights were in no manner prejudiced by the fact that Leed, rather than the corporation named, was the real party in interest.

Under their agreement to carry the granite, the appellants made themselves liable for the damages suffered by the shippers, and their various conversations with Leed relative to raising the cargo, together with their letter of July 18, 1917, constituted a contract obligating them to pay the reasonable value of such work. In the absence of such contract, they would have been liable in damages, under the original agreement, for the reasonable cost of raising the granite and putting it in the condition in which it was when received by them. The judgment imposes no greater obligation.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.