[Civ. No. 7479. First Appellate District, Division Two.—March 31, 1931.]

MILDRED VERA SMITH, Respondent, v. PICKWICK STAGES SYSTEM (a Corporation), Appellant.

Barry J. Colding, Theodore Hale, Carroll B. Crawford and B. P. Gibbs for Appellant.

Charles W. Fisher and Leicester & Leicester for Respondent.

PRESTON (H. L.), J., *pro tem.*—This is an appeal by the defendant, Pickwick Stages System, a corporation, from a judgment entered against it upon the verdict of a jury in the sum of $1500.

Plaintiff, Mildred Vera Smith, brought this action for damages, charging that she was severely injured in the Union stage station of defendant in San Francisco, through the carelessness and negligence of the driver of one of defendant's stages.

The facts necessary for a correct understanding of the questions involved on this appeal, and which are practically uncontradicted, may be thus briefly stated: On the morning of January 15, 1927, the plaintiff went to the depot of defendant in San Francisco for the purpose of meeting her mother, who had written plaintiff that she would arrive in San Francisco from Los Angeles on a Pickwick stage. Her mother arrived in one of appellant's stages, and was met in the waiting-room of said station by plaintiff. Mrs. Dobson the mother, had lost her purse and thought she had left it in the stage. Plaintiff and Mrs. Dobson went through a door which separates the waiting-room from the part of the station where the stages enter and discharge their passengers, called "the unloading room", and through which Mrs. Dobson and the other passengers from Los Angeles had just

come. Plaintiff saw the stage driver standing at the rear end of the stage, unloading baggage from it and, after telling him they were looking for a purse, they were instructed and invited by the driver to look in the stage for the purse. This they did, and while plaintiff was in the stage, the driver climbed on the roof of the stage and continued to unload baggage therefrom; he threw down two suitcases to a sailor, who was waiting for them beside the stage. After plaintiff had gotten out of the stage, and had taken a step or two toward the waiting-room, the driver threw down a third piece of baggage and hit plaintiff on the head, inflicting serious injury and rendering her unconscious. The driver jumped off of the stage and helped to carry plaintiff into the waiting-room. As he was carrying her into the waiting-room he stated to a friend of Mrs. Smith that he had hit her on the head with a sailor's dunnage bag. This same stage driver, however, testified at the trial, which took place about three years after the accident, that the sailor hit plaintiff with the bag, but this testimony was contradicted by the statement made by the driver at the time of the injury, and also by the testimony of Mr. Aubrey, who was an eye-witness to the accident. The sailor did not testify at all in the case. At the time of the injury, the driver was the only one on the top of the stage, and the bag which hit plaintiff came from the top of the stage. The jury found by its verdict that the driver was the one who threw the bag down on plaintiff's head.

Appellant's first contention is this: "The trial court erred in granting plaintiff's motion to amend her complaint, over the objection of appellant, by substituting 'Pickwick Stages System, a Corporation' as defendant herein for 'Pickwick Corporation, a Corporation', for the reason that any right of action plaintiff might once have had, if any, was barred by the terms of subdivision 3, section 340, Code of Civil Procedure."

This contention is based upon these facts: The original complaint, which was filed on June 30, 1927, named "The Pickwick Corporation, a Corporation, D. G. Vaio (the driver of the stage) and John Doe" as defendants. Summons was issued on June 30, 1927, commanding "The Pickwick Corporation, a Corporation, D. G. Vaio and John Doe" to appear and answer within the statutory time. The return on

the summons, made by the sheriff, shows service on "C. F. Wren, President of The Pickwick Corporation, a Corporation, of a copy of summons and complaint". "The Pickwick Corporation, a Corporation" demurred to plaintiff's complaint on September 8, 1927, and answered on October 4, 1927. On June 26, 1929, two years and five months after the accident, the plaintiff filed a motion to "amend her complaint by correcting a mistake in the name of the defendant wherever it occurs therein from the Pickwick Corporation to Pickwick Stages System, the correct name of the defendant herein". Said motion was made upon the following grounds: "(1) That the true name of the defendant is Pickwick Stages System, instead of Pickwick Corporation; (2) That a mistake was made in the name of the defendant in said complaint; (3) That in furtherance of justice the plaintiff should be allowed to amend her complaint by correcting the mistake in the name of the defendant; (4) That Pickwick Stages System has been properly served with the summons and a copy of the complaint herein."

The motion was heard, and the court made the order permitting the amendment, upon the affidavit of Charles W. Fisher, one of plaintiff's attorneys, and the counter-affidavit of C. F. Wren, the president of the Pickwick Corporation, and also president of Pickwick Stages System.

These two affidavits are in direct conflict in every important particular. The trial court accepted the affidavit made on behalf of plaintiff as true. This action of the trial court in determining whom to believe is conclusive on appeal to this court; therefore, the statements in the Fisher affidavit, in favor of plaintiff, must control. (*Patterson* v. *Keeney*, 165 Cal. 466 [Ann. Cas. 1914D, 232, 132 Pac. 1043]; *Nelsen* v. *Joseph*, 78 Cal. App. 743 [248 Pac. 754]; *Brown* v. *DeWaard & Sons*, 99 Cal. App. 222 [278 Pac. 257]; *Doak* v. *Bruson*, 152 Cal. 19 [91 Pac. 1001]; *Flood* v. *Goldstein Co.*, 158 Cal. 248 [110 Pac. 916]; *Corgiat* v. *Realty Mortgage Corp.*, 86 Cal. App. 37–40 [260 Pac. 573].)

From the Fisher affidavit, two very essential facts were established: (1) That the president of Pickwick Stages System *was actually served with a copy of the summons and complaint in this action*, thus giving the court jurisdiction of that corporation; and (2) that, while there were two corporations — one the "Pickwick Corporation,"

and one "Pickwick Stages System", nevertheless, they used these names interchangeably throughout California, and that "The Pickwick Corporation" was the holding company and owned all the capital stock of "Pickwick Stages System"; also that "Pickwick Stages System" specifically advertised the stage business under the name of "Pickwick Corporation".

Such an amendment is specifically permitted by section 473 of the Code of Civil Procedure. The case at bar is essentially identical with and governed by such cases as *Nisbet* v. *Clio Min. Co.*, 2 Cal. App. 436 [83 Pac. 1077]; *Thompson* v. *Southern Pac. Co.*, 180 Cal. 734 [183 Pac. 153]; *Walsh* v. *Decoto,* 49 Cal. App. 737 [194 Pac. 298]; *Craig* v. *San Fernando Furniture Co.*, 89 Cal. App. 168 [264 Pac. 784]; *Lindsey* v. *Superior Court,* 100 Cal. App. 37 [279 Pac. 837].

In the case of *Thompson* v. *Southern Pac. Co., supra,* the original complaint named the defendant as the "Southern Pacific Railroad Company". Five years after the accident out of which the action arose, the pleader discovered that the defendant against whom he had his cause of action was really a corporation by the name of "Southern Pacific Company". Two separate corporations existed — one incorporated under the laws of California, and the other incorporated under the laws of Kentucky. From the outset the plaintiff in that case was pursuing the concern that operated the train with which he collided, and when he discovered he had designated the defendant by a misnomer the court granted him permission to amend to correctly state the name of the defendant he urged his claim against. The Supreme Court held the amendment to be proper. There were, in fact, no new defendants brought in.

The same question was involved in the case of *Walsh* v. *Decoto, supra.* In the original complaint in that case "The Blue Taxicab Corporation" was named as the defendant, and was described in the caption of the complaint as a corporation and in the body of the complaint appeared the usual allegation that the defendant was a corporation. Two years after the accident out of which the action arose, and after an answer had been filed on behalf of The Blue Taxicab Corporation, as defendant, the plaintiff discovered that he was in error in designating the concern against whom he

was asserting his claim as a corporation; in fact, it appeared that The Blue Taxicab Corporation was not a corporation, but was merely a fictitious name under which one Ezra W. Decoto conducted his business. The court permitted the plaintiff to amend his complaint so that the defendant was designated as Ezra W. Decoto, doing business under the name and style of The Blue Taxicab Corporation. The court of appeal sustained the lower court in permitting the amendment, and in that case the change or departure was much more marked than in the case at bar.

In the case at bar, it can be easily ascertained from an examination of the original complaint that it was the intention of the plaintiff to sue "Pickwick Stages System", for the complaint states that the defendant *operated stages between Los Angeles and San Francisco; that it maintained a terminal at 75 Fifth street, San Francisco, and that on January 15, 1927, it employed D. G. Vaio as a stage driver.* Every one of the facts alleged were and are true as regards the "Pickwick Stages System", but did not apply to any other corporation, so that any officer of the Pickwick Stages System who read the complaint must have known exactly what corporation was intended as defendant. Furthermore, the answer shows that the defendant that appeared was, in fact, the "Pickwick Stages System", and not the Pickwick Corporation, for in the answer to the original complaint not only is a general denial set up, but also a separate defense is interposed, in which the defendant pleads "that the injury was due to the carelessness and negligence of plaintiff and this carelessness and negligence of plaintiff was the sole proximate cause of the injury and damage", etc. This answer was verified so the defendant must surely have known all about the injury when it filed this verified answer, for the facts are not alleged on information and belief, but are stated as absolutely true. It would be very difficult for a defendant who was not a party to the accident to secure such positive information as to the cause thereof. *The only corporation which could truthfully swear to such a defense would be the one whose employees and servants had actually participated in the events leading up to the accident. This, of course, was the Pickwick Stages System.*

We conclude, therefore, that the trial court did not err in permitting the amendment to be made.

■ Appellant also contends that the demurrer to the amended complaint, and the plea in the answer raising the statute of limitations, should have been sustained. There is no merit· in this contention. The same contention was made in the case of *Thompson* v. *Southern Pacific Co., supra;* and also in *Walsh* v. *Decoto, supra,* and in both cases the court decided the point adversely to appellant's contention. It clearly appears from a reading of the original and amended complaint that the plaintiff at all times was urging her claim for damages against the corporation or concern *operating the stage line and stage depot, and that had in its employ as a stage driver one D. G. Vaio.* The amended complaint does not state a new and different cause of action, or bring in any new or different party defendant, *but merely corrects the name of the real party defendant where a misnomer had occurred.* Under such circumstances, the rule is elementary that the amendment relates back to the time of filing the original complaint, so far as the statute of limitations is concerned. (*Cox* v. *San Joaquin Light etc. Co.,* 33 Cal. App. 522 [166 Pac. 578]; *United States Farm Land Co.* v. *Bennett,* 55 Cal. App. 299 [203 Pac. 794]; *Alexson* v. *Steward,* 55 Cal. App. 251 [203 Pac. 423]; 16 Cal. Jur. 547, and cases there cited.)

It is next contended by appellant that the evidence is insufficient to support the verdict and under this contention it states that the facts disclose "(1) that the accident was unavoidable; (2) that plaintiff was at the time of the injury a trespasser, or at the best a bare licensee, as to whom the appellant had only a duty to abstain from wilfully inflicting injury".

We find no merit in any of these contentions.

■ Appellant admits that the plaintiff was an invitee while in the waiting-room of its depot, but claims that she was a trespasser when she entered the part of the depot called the "loading room" and the stage for the purpose of searching for the purse. In entering the "loading room" and the stage, plaintiff was there as one of three classes of persons: A trespasser, licensee or an invitee. If there without the knowledge or consent of the master or servant she was a trespasser;· if there without the knowledge of the master, but with the knowledge of the servant who had no authority to invite her, she was a mere licensee; but if there

126

with the consent of the master or with the consent of the servant, having authority, express or implied, to grant the privilege, she was an invitee. (*Dyer* v. *McCorkle*, 208 Cal. 216 [280 Pac. 965].)

The uncontradicted evidence shows that plaintiff was in the "loading room" and also in the stage at the express invitation of the driver, who had charge of the driving and unloading of the stage, and there is no contention by appellant that the driver lacked authority from it to grant plaintiff the privilege of entering the "loading room" and stage. The driver's authority will, therefore, be presumed, Plaintiff's legal status was, therefore, that of an invitee in the "loading room" of appellant at the time of her injury, and as such, she was entitled to ordinary care at the hands of the servant of appellant, and an omission in this particular would be binding upon the master for at the time of the infliction of the injury the servant was engaged in accomplishing an object in the line of duties assigned to him by such master. (*Dyer* v. *McCorkle, supra; Ingledue* v. *Davidson,* 102 Cal. App. 697 [283 Pac. 837]; Thompson on the Law of Negligence, p. 146; *Madigan* v. *O. A. Hale & Co.,* 90 Cal. App. 151 [265 Pac. 574]; *Goldstein* v. *Healy,* 187 Cal. 206 [201 Pac. 462]; *Oles* v. *Kahn Bros.,* 81 Cal. App. 76 [253 Pac. 158].)

We think that plaintiff's status was that of an invitee for another reason, to wit: It was the duty of appellant to give its passengers a reasonable opportunity to remove their baggage, and when plaintiff aided in looking for the lost purse, a duty which rested on the stage driver, she was also aiding the appellant; or, in other words, plaintiff, at the time she was injured, was engaged in a matter which was to the mutual advantage of appellant and its passenger, and was therefore an invitee on the premises. (*O'Grady* v. *Chicago B. & Q. R. Co.,* 90 Neb. 339 [133 N. W. 426]; *Lawton* v. *Little Rock & Ft. S. Ry. Co.,* 55 Ark. 428 [29 Am. St. Rep. 48, 15 L. R. A. 434, 18 S. W. 543, 544].)

It seems idle to argue that the accident was unavoidable, or that there was no negligence shown in this case on the part of the driver. It was stipulated that Vaio (the man who threw the dunnage bag on respondent's head) was an employee of the defendant, Pickwick Stages System, and had charge of its stage. The evidence is amply suffi-

cient to support the conclusion that he was acting within the scope of his employment in unloading baggage from the stage. The driver was neglient in failing to look where he was throwing the baggage, he was negligent in failing to give warning that a dunnage bag would be thrown from the top of the stage. The law is well established that the master is liable for the torts of the servant if committed by him within the scope of his employment. (*O'Callaghan* v. *Bode*, 84 Cal. 489 [24 Pac. 269]; *Johnson* v. *Monson*, 183 Cal. 149 [190 Pac. 635]; *Ruppe* v. *City of Los Angeles*, 186 Cal. 400 [199 Pac. 496].)

The other contentions made by appellant are also without merit and do not require discussion.

We find no reason to disturb the verdict and judgment. The judgment is, therefore, affirmed.

Nourse, P. J., and Sturtevant, J., concurred.