74 Cal.App.2d 984 (1946)
ERNEST G. LESTER et al., Respondents,
v.
CHESTER F. BEER, Appellant.
California Court of Appeals. 
May 3, 1946.
 Forrest A. Betts for Appellant.
 W. T. Stockman and Alvin W. Kunke for Respondents.
 BISHOP. J.
 The plaintiffs in this unlawful detainer action were given a judgment evicting the defendant from their premises, he having remained in possession after his month to month tenancy had been terminated. So far as the state law is concerned, the defendant finds no fault with the judgment, his attack upon it being based upon the proposition that the plaintiffs did not appear, within the meaning of section 6(a)(6) of the Rent Regulation for Housing, issued under the authority of the Federal Emergency Price Control Act of 1942 (50 U.S.C.A.App., 901 et seq.), to have had an "immediate compelling necessity" to recover possession of the premises. Because we do not agree with defendant's proposition, we are affirming the judgment.
 The problems of this appeal are somewhat affected by the preceedings which preceded the judgment. In the complaint as originally filed, the sole defendant was referred to as "Chester F. Beer, Jr." It was alleged that the plaintiffs had owned certain premises a joint tenants continuously since prior to August 15, 1940, at which time they leased them to the defendant on a month to month tenancy; that the defendant went into possession and remains there, although there had been served upon him a written notice terminating his tenancy. Other allegations touching upon the matters pertinent to the Rent Regulation will be noted presently. An answer was filed by Charles F. Beer, Jr., and the case proceeded to trial.
 At the trial, it developed that there were two persons who used the name "Chester F. Beer, Jr.," a father and a son. The lease had been made with the father, the son at the time being some twelve years of age. The notice terminating the tenancy had been served upon the father, not on the son. Summons had been served on the father, not on the son. Yet it was the son who had filed the answer in the case; the father failed to make any appearance, either in the case or at the trial. These facts appearing, the trial court, upon plaintiffs' motion, amended the complaint by striking the abbreviation. [74 Cal.App.2d Supp. 987] "Jr." where it appeared following the name "Chester F. Beer" and by inserting in its place the words "also known as Chester F. Beer, Jr." It then dismissed the complaint "as to the answering defendant," entered and default of the real defendant, and gave judgment for the plaintiff. After the filing of findings of fact, judgment was entered, wherein it was adjudged that plaintiffs "have and recover judgment against Chester F. Beer who is the tenant and occupant" of the premises, and that they recover $55.50 from him. The judgment makes no mention of Chester F. Beer,Jr., but he joined with Chester F. Beer in filing a notice of appeal from the judgment.
 [1] The trial court acted quite properly in disregarding the answer filed by the son, who was a stranger to the action and had no right to interject himself into it. (Mercantile Trust Co., v. Stockton etc. Co. (1919), 44 Cal.App. 558, 560-564 [186 P. 1049].) The father was unmistakably the person meant by the plaintiff to be the defendant in the case. [2] The trial court had jurisdiction of the action, and upon service of summons upon the defendant father, obtained jurisdiction over him, quite irrespective of whether or not he was properly named in the complaint and summons. (McGinn v. Rees (1917), 33 Cal.App. 291, 294 [165 P. 52]; Welsh v. Kirkpatrick (1866), 30 Cal. 202, 206 [89 Am.Dec. 85]; McDonald v. Swett (1888), 76 Cal. 257, 259 [18 P. 324]; Brum v. Ivins (1908), 154 Cal. 17, 20 [96 P. 876, 129 Am.St.Rep. 137]; Thompson v. Southern Pacific Co. (1919), 180 Cal. 730, 732 [183 P. 153]; Smith v. Pickwick Stages System (1931); 113 Cal.App. 118, 122 [297 P. 940].) [3] As the only defendant in the case failed to put in an appearance, his default was properly entered.
 [4] A defendant whose default has been taken may appeal from the judgment which follows. Ordinarily, however, he may not question the sufficiency of the evidence which the trial court may have heard before it granted the relief prayed for (Crackel v. Crackel (1911), 17 Cal.App. 600, 601 [121 P. 295]); "his attack must be confined to the consideration of jurisdiction or of the sufficiency of the pleadings." (Reed Orchard Co. v. Superior Court (1912), 19 Cal.App. 648, 662 [128 P. 9].) He may not take too critical a view of the pleadings, however. We find this statement in (San Gabriel Valley Bank v. Lake View Town Co. (1906), 4 Cal.App. 630, 633 [89 P. 360], expressing the principles governing in such a case: "The sole question is whether the complaint [74 Cal.App.2d Supp. 988] contains averments sufficient to support the judgment. In such cases the rule is invariable that every intendment shall be indulged in favor of the judgment, and that all doubts of construction shall be resolved in support thereof. If the complaint can be construed favorably to the upholding of the judgment, such construction shall be adopted." Again, in Alexander v. McDow (1895), 108 Cal. 25, 29 [41 P. 24], we find: "Thus, while a judgment will not relieve from the entire absence of a necessary averment, it will cure defects in all such averments as may by fair and reasonable intendment be found to have been pleaded, although defectively." (See, also, Nevin v. Gary (1909), 12 Cal.App. 1,4,5, [106 P. 422].)
 Defendant's appeal resolves itself, therefore, into an attack upon the complaint, and we are called upon to determine whether it states sufficient facts to reveal that the plaintiffs were entitled to the relief which they sought and obtained. We avoided the use of the customary expression "states facts sufficient to state a cause of action" because the question is not whether plaintiffs have a legal right to evict the defendant--that is not in doubt--but whether the complaint shows them to be free from the limitations imposed by section 6 of the Rent Regulation so that they may enforce their right.
 The provisions of section 6(a)(6) of the Rent Regulation no longer read as they did upon those previous occasions when we were called upon to consider them. [fn. *] Section 6(a) still opens with the restrictive paragraph: "So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated ... unless:" Then there are depicted several situations in which evictions may be had, the last of them, as application to the case under review, being worded as follows: "(b) Occupancy by Landlord. The landlord owned, ... the housing accommodations prior to [November 1, 1942] ... and has an immediate compelling [74 Cal.App.2d Supp. 989] necessity to recover possession of such accommodation for use and occupancy as a dwelling for himself. ..."
 [5a] As we have already noted, the complant contained an averment that the plaintiff have been the owners of the premises which they wish to occupy for the period required to bring them within the permissive provisions of section 6(a) (6). One more fact must appear to meet the conditions imposed by that section; that is, that the plaintiff have an immediate compelling necessity to recover possession of their premises for use and occupancy as a dwelling for themselves. Had such an allegation, without qualification, appeared in the complaint, it would have been sufficient. [6] The Rent Regulation makes no attempt to define what is meant by "immediate compelling necessity," so that the pleader may use these words as the regulation does, in their ordinary meaning and not as a conclusion of law based upon other, ultimate, facts. Of course, whether or not any particular plaintiff has an Immediate compelling necessity is to be determined as a conclusion from the facts which the evidence discloses, but the conclusion is one of fact, not of law, and so is properly pleaded as the ultimate fact. See Estate of Bixler (1924), 194 Cal. 585, 589 [229 P. 704]; opinion of Supreme Court denying hearing in Rivera v. Cappa (1916), 29 Cal.App. 496, 499 [156 P. 1016]; First-Trust etc. Bank v. Meredith (1936); 5 Cal.2d 214, 221 [53 P.2d 958], and Green v. Darling (1925), 73 Cal.App. 700, 703 [239 P. 70].) [5b] In their complaint, however, plaintiffs, while stating that they had an immediate compelling necessity, preface the statement with a number of facts, quite evidently offered as the basis for the ultimate fact, as they were connected with it by "therefore." "While the allegation of an asserted fact which is stated in the form of a conclusion may ordinarily be sufficient in the absence of a special demurrer, it is rendered inadequate, however, when the recited facts upon which it depends fail to support the conclusion. A conclusion has no greater force than the express premise upon which it is founded." (Miles v. McFarlene (1930), 104 Cal.App. 513, 518-519 [286 P. 507].)
 Many of the facts alleged in support in plaintiffs' conclusion that they had an immediate compelling necessity to obtain possession of their property, fail of their purpose. That is to say, we do not find the simple fact that the plaintiff Ernest is in poor health to be a good basis for concluding that [74 Cal.App.2d Supp. 990] he needs to live in the house he rented to the defendant. Nor is the desire of the plaintiff to economize made to appear a necessity. That their children are attending school seven miles from their present address, but only one mile from the house they seek to recover, appears to be a great inconvenience, but hardly to create an immediate compelling necessity. However, in the complaint it does appear, from a combination of inferences from facts alleged and from the allegations themselves--and both may be looked to in support of a judgment after default (Nevin v. Gary, supra, 12 Cal.App. 1, 5 [106 P. 422])--that the plaintiffs have been three children of school age; that they have sold and passed title to the place in which they are living, giving to the new owners an immediate right to evict them (Code Civ. Proc., 1161a, subd. 4); and that they have sought to rent other quarters for themeselves and their children, but in vain. Upon these facts they had a firm footing as they asserted that they had an immediate compelling necessity to secure possession of their own property. It is possible that the circumstances surrounding plaintiffs' sale of the place they were occupying when the complaint was filed were such that on some theory of public policy they should not be heard now to say that they are in dire need of a place to live. Knowing nothing of those circumstances, we go no further than to state that the mere fact that the present compelling necessity would not have arisen had they not sold their former residence does not defeat their right to rely upon it as an exception to the general rule of section 6, which forbids an owner to dispossess a tenant so long as he pays his rent.
 There are other provisions of section 6 of the Rent Regulation which we must take into account as we test the sufficiency of the complaint before us. They are found in subdivision (d)(1), reading, so far as concerns this case, as follows: "Every notice to a tenant to vacate or surrender possession of housing accommodations shall state the ground under this section upon which the landlord relies for removal or eviction of the tenant. A written copy of such notice shall be given to the area rent office within 24 hours after the notice is given to the tenant."
 "No tenant shall be removed or evicted from housing accommodations by court process or otherwise, unless at least ten days ... prior to the commencement of an action for removal or eviction, the landlord has given written notices of the proposed removal or eviction to the tenant and to the area [74 Cal.App.2d Supp. 991] rent office, stating the ground under this section upon which such removal or eviction is sought and specifying the time when the tenant is required to surrender possession. ..."
 Notice was served upon the defendant, according to the complaint, on November 6, 1945, requiring him to surrender possession on or before December 15, and a copy of this notice was served upon the area rent office November 7. The notice contained these statements, among others: "The undersigned owned [the premises in question] prior to November 1, 1942, has continuously owned said accommodations since prior to November 1, 1942 up to and including the present date, and has an immediate compelling necessity to recover possession of said accommodations for immediate use and occupancy as a dwelling for himself." The "undersigned" was the plaintiff Ernest Lester. The present action was not commenced until January 9, 1946.
 [7] The first two sentences of our quotation from section 6(d)(1) we regard as directory only, but the concluding paragraph is plainly mandatory. [5c] Measured by its provision, the contents of the notice upon which plaintiffs rely were sufficient, and it was timely served. [8] The complaint, then, is sufficient with respect to the notice, with one possible exception: there is nothing in the complaint to the effect that back at the time the notice was served on the defendant, November 6, 1945, the plaintiffs then had an immediate compelling necessity to gain possession of the premises. Is there an essential allegation, therefore, lacking in the complaint? We think not.
 While we are mindful of the fact that the Rent Regulation was issued because of a serious condition respecting housing in defense rental areas, and its provisions must be given a construction which will effectuate their purpose, we also recognize that they do constitute a drastic limitation upon the rights of an owner of property to enjoy the benefits of that ownership, and the regulation should not be given an interpretation which will operate as a restriction upon the right of an owner to use his own property beyond that clearly imposed by its terms. That which section 6 prohibits is the removal of a tenant, by court action or otherwise, except when one of the enumerated grounds exists. There is no provision which declares that a notice to quit may not be served unless and until the owner's necessity has become immediate. It is the [74 Cal.App.2d Supp. 992] eviction that must await that crisis. The notice that is required to state the ground upon which "such removal or eviction is sought" is a notice "of the proposed removal or eviction." The removal is not brought about by the service of the notice, but is accomplished ten or more days later by court action or self service, in those states where the latter is permitted. It is obvious that the tenses were not chosen with meticulous care, for a notice that more than ten days hence a landlord proposed to evict a tenant, if the tenant does not heed the notice, can only state the ground upon which the eviction will be, not is, sought. It is unlikely that in most of the circumstances listed in section 6(a) as grounds for evictions, the question now being considered will arise. It will not be expected that a landlord will foresee, for example, that his tenant is going to violate a substantial obligation of his tenancy. But it often happens that an owner of leased premises, who at the moment has other premises at his disposal, can clearly foresee that by the time he has complied with the state law and brought himself within the federal rent regulations he will be out on the street, unless he can obtain possession of his own property. He may be about to lose the place where he now lives by sale under a trust deed. He may have been given notice by his landlord that he is to be evicted. To hold that he must wait until he is actually without a place to house himself and family before he can give a notice that he proposes to evict a tenant, is to read into section 6(d)(1) a restriction which is not expressly written there, and which is not required by that which does appear. The immediate compelling necessity must exist when the action to evict is commenced, because of the "settled rule that a plaintiff's right of action must exist when he commences his action, for the rights of the parties are to be judged by the conditions existing at the time the action was begun." (Stanley v. Westover (1928), 93 Cal.App. 97, 105 [269 P. 468].) It is not required to exist when the notice terminating a month to month tenancy is served, by the fact that that notice must contain a statement, necessarily prophetic in its nature because it has reference to a state of facts that must be in existence sometime in the future, to the effect that the ground upon which the eviction will be sought is the landlord's immediate compelling necessity.
 [9] It may be, because the public welfare is involved in the matter of housing in the defense rental areas, that even on an appeal from a judgment after default the sufficiency of [74 Cal.App.2d Supp. 993] the evidence as to the existence of the immediate compelling necessity at the time of trial, may be questioned. We need not decide the matter in this case, for the evidence heard by the trial court was ample to sustain its decision. At the time of the trial, the plaintiff-father was living with a son in a hotel in downtown Los Angeles. His wife and two children were residing in a motel in the suburbs. It is evident that the calamity they foresaw when they served the notice upon the defendant terminating his tenancy has come to pass, and they and their family have an immediate compelling necessity to repossess the property awarded them by the judgment. The fact that they are not actually required to sleep in the fields is not a denial that the condition exists by virtue of which they may, by the provisions of section 6(a)(6) of the Rent Regulation, evict the present occupant of their property.
 The appeal of Chester F. Beer, Jr., from the judgment to which he is a stranger and by which he is not aggrieved, is dismissed. The judgment is affirmed. The plaintiffs are entitled to their costs of appeal.
 Kincaid, J., concurred.
 SHAW, P. J.
 I dissent, because I am unable to agree that the ground on which the landlord seeks the tenant's removal under section 6(a) of the Rent Regulation for Housing need not exist at the time the landlord gives notice of removal to the tenant.
 While this regulation, which was issued by the Price Administrator under the Emergency Price Control Act of 1942, is in derogation of the usual rights of an owner of real property to occupy or dispose of it as he pleases, and for that reason its interpretation should not be pushed by strained implication or construction beyond the satisfaction of the purposes which brought it forth, yet those purposes, as declared by the act, in furtherance of which the Price Administrator is authorized to make regulations, are very broad (see 50 U.S.C.A.App., 901) and the regulations made under this authorization should receive a reasonably liberal construction to carry out those purposes.
 Section 6(a) of the regulation begins with the declaration that "So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, [74 Cal.App.2d Supp. 994] by exclusion from possession or otherwise, nor shall any person attempt such removal or exclusion ... unless ..." Here follows an enumeration of five separate sets of facts, connected by the conjunction "or," one of which is (6) discussed in the foregoing opinion (without renumbering (6), one set of facts, numbered (5), was removed by amendment). If the regulation stopped here, it must be concluded that the state of facts on which the right of removal is claimed need not exist at any time before an action to evict is brought.
 But other provisions of the regulation lead me to a different conclusion. Section 6(d)(1) provides that "Every notice to a tenant to vacate or surrender possession of housing accommodations shall state the ground under this section upon which the landlord relies for removal or eviction of the tenant. ... No tenant shall be removed or evicted from housing accommodations by court process or otherwise, unless at least ten days ... [an exception not applicable here] prior to the time specified for surrender of possession and to the commencement of any action for removal or eviction, the landlord has given written notices of the proposed removal or eviction to the tenant and to the area rent office, stating the ground under this section upon which such removal or eviction is sought. ..."
 By these provisions the landlord is required to state the "ground under this section" for his proposed removal of the tenant. A variety of facts are specified in "this section" as grounds for removal. The first four of them are described in words referring to past or completed action. Section 6(a)(1) specifies as a ground that the tenant "has refused" to execute a renewal of the lease; section 6(a)(2) provides for the case where the tenant "has unreasonably refused" the landlord access to the property, etc.; section 6(a)(3) authorizes removal where the tenant "has violated" a substantial obligation of the tenancy and "has continued" such violation after notice, but also has provisions couched in the present tense for the case where the tenant "is committing" a nuisance; and section 6(a)(4) states as a ground of removal that the tenant's lease "has expired," etc. No landlord could state any of these "grounds" as they are described in the regulation by declaring that the tenant was about to do or was expected to do any of the acts specified; but if the acts had not yet been done and for that reason the grounds did not exist he could truthfully do no more. Prophecy is [74 Cal.App.2d Supp. 995] uncertain at best, and it does not seem probable that the author of this regulation intended to sanction its use in the process of removing a tenant. Even in case of a nuisance, the landlord, in order to state the ground as described in the regulation, must declare that the tenant is committing it, not that he will do so. It is clear that in all these cases the "ground" which can be stated in the notice is a completed and then existing state of facts, not merely one which the landlord hopes, expects or fears may come to pass in the near or distant future.
 The remaining ground of removal sanctioned by section 6(a), as amended September 15, 1945, and the one here in question, is that the landlord "has an immediate compelling necessity to recover possession of such accommodations for use and occupancy as a dwelling for himself." This also is worded in the present tense, and the landlord cannot state what is here described in his notice without using the present tense and saying that he "has" a necessity, etc. Thus this ground is placed in the same class as the other grounds already discussed. All must exist as grounds at the time the notice is given; for, if not, the landlord must either state what is not true in his notice or depart from the provisions of the regulation in stating his grounds.
 Two provisions of section 6(d)(1) above quoted corroborate, rather than defeat, this construction. The first requires the notice to state the ground "upon which the landlord relies for removal." The second prohibits removal of a tenant "by court process or otherwise" unless the notice served states "the ground under this section upon which such removal or eviction is sought." The use of the present tense in these provisions, if taken literally, prevents the landlord from stating in his notice that he will rely or will seek removal of the tenant upon any of the specified grounds, and in that sense it need not be characterized as inaccurate. Indeed, it is quite accurate if the notice is regarded as a part of the procedure for removing the tenant, whether that be done by court process or otherwise. Since this construction gives full effect to all the words of the regulation, it should be adopted. It is in accord, also, with the definition of the verb "seek," the meaning of which most appropriate to this case is, as given in Webster's New International Dictionary, "to try to acquire or gain." Accepting this construction, the landlord [74 Cal.App.2d Supp. 996] is seeking the removal of his tenant (it "is sought") when he gives the notice which is necessary to such removal. In other words, his pursuit of the possession begins with his notice.
 What further steps the landlord must taken in order to complete the removal depends upon local law and the compliance of the tenant. If the tenant heeds the notice and departs, the process of removal is complete. If he stays, there seem to be some states in which the landlord may enter and remove him if that can be done peacefully (see 36 C.J. 600-601; notes, 45 A.L.R. 314, 49 A.L.R. 517, 60 A.L.R. 280); but in California the landlord must take legal proceedings, of which unlawful detainer is the speediest, to effect the removal. (Stockes v. Nash (1945), L.A.Civ.A. 6056; California Products Inc. v. Mitchell (1921), 52 Cal.App. 312 [198 P. 646].) The regulation, being nation wide in its applications must be, and on the construction I have given it is, adaptable to either state of the law.
NOTES
[fn. *] *. Bumgarner v. Orton (1944), 63 Cal.App.2d Supp. 841 [146 P.2d 67]; Jones v. Shields (1944), 63 Cal.App.2d Supp. 846 [146 P.2d 735]; Lester v. Isaac (1944), 63 Cal.App.2d Supp. 851 [146 P.2d 524]; Wrenn v. Sutton (1944), 65 Cal.App.2d Supp. 823 [150 P.2d 589]; Bauer v. Neuzil (1944), 66 Cal.App.2d Supp. 1020 [152 P.2d 47].